**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Peter Charles ACUNA, Defendant–Appellant.**

No. 92–30289.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 1, 1993.

Decided Nov. 24, 1993.

---

Gar Hackney, Lynn, Scott, Hackney, Jackson & Sullivan, Boise, ID, for defendant-appellant.

Monte Stiles, Asst. U.S. Atty., Boise, ID, for plaintiff-appellee.

Before: WALLACE, Chief Judge, BOOCHEVER and NOONAN, Circuit Judges.

WALLACE, Chief Judge:

Acuna appeals from his sentence imposed under the United States Sentencing Guidelines (Guidelines) for various narcotics and weapons offenses. The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291. We affirm.

## I

On April 19, 1991, Acuna, a California resident, telephoned Geo–Data Chemicals (Geo–Data), located in Boise, Idaho, and inquired about the purchase of hydriodic acid, a methamphetamine precursor. The next day, Acuna and his wife met with a representative of Geo–Data and discussed the purchase of hydriodic acid, ephedrine, thionyl chloride, and glassware. Acuna also stated that he could provide freshly cooked methamphetamine for $10,000 per pound. That evening, Acuna purchased 10 gallons of hydriodic acid from the Geo–Data representative. Acuna was unaware that the Geo–Data representative was an undercover narcotics agent and Geo–Data was a covert operation run by the Idaho Bureau of Narcotics.

Between May 6 and May 11, 1991, Acuna made frequent calls to Geo–Data. He negotiated for the purchase of ephedrine, hydriodic acid, methylamine, thionyl chloride, phenylacetic acid, and red phosphorous, all of which are chemicals used in manufacturing methamphetamine. On May 11, Acuna met with the undercover agent at a truck stop in Boise, and purchased the chemicals in exchange for $5,500 and three pounds of marijuana. He also stated that in a future transaction he would sell the agent two and a half pounds of methamphetamine for $25,000.

Acuna was arrested at the scene, after taking possession of the chemicals. At the time of the arrest, Acuna had a semi-automatic pistol tucked into the waistband of his pants. Later that evening three coconspirators were arrested at a nearby motel. Another coconspirator was subsequently arrested in Mountain Home, Idaho.

Just prior to trial, Acuna negotiated a plea agreement with the government, in which he was to plead guilty to one count of conspiracy to possess listed chemicals with intent to manufacture methamphetamine in violation of 21 U.S.C. §§ 846 and 841(d)(2), five counts of possession of listed chemicals in violation of 21 U.S.C. § 841(d)(2), one count of distribution of marijuana in violation of 21 U.S.C. § 841(a)(1), one count of using a firearm during a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1), and one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). As part of the plea agreement, Acuna agreed to be interviewed by government agents and to testify truthfully at his coconspirators' trial. The prosecution elected not to call Acuna as a witness; he did, however, testify for the defense.

## II

Acuna argues that his sentence was improperly enhanced for obstruction of justice pursuant to section 3C1.1 of the Guidelines which states: "If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels." U.S.S.G. § 3C1.1 (1991). Factual determinations made in the application of section 3C1.1 are reviewed for clear error. *United States v. Ford*, 989 F.2d 347, 351 (9th Cir.1993) (*Ford*). The legal conclusion that Acuna's conduct constituted an obstruction of justice within the meaning of section 3C1.1 is reviewed de novo. *Id.*

The district court based the two level enhancement for obstruction of justice on two findings: (1) that Acuna breached his plea agreement with the government by failing to cooperate with government investigators, and (2) that he provided false testimony at his coconspirators' trial.

Acuna argues that _____ did not require him to cooperate with the government. The government responds that the plea bargain obligated him to provide truthful information to investigators and to testify truthfully at his coconspirators' trial.

 According to the terms of the plea bargain, Acuna agreed to be questioned about his and others' involvement in the case and to testify truthfully at trial regardless of who asked the questions. At the plea hearing, Acuna stated under oath that he agreed to these conditions. Although the plea agreement did not contain the word "cooperate," it is clear that Acuna was obligated to cooperate to the extent that he agreed to be interviewed and to testify truthfully at trial.

Acuna alleges that he told the truth at all times. He contends that the information he provided to the government agents and the testimony he gave at trial were fully consistent with his attorney's description given at the plea hearing of what his testimony would be. Acuna also argues that the district court erred by finding that he admitted the truth of the overt acts contained in the indictment. Thus, Acuna asserts that the district court's finding that he gave false testimony was clearly erroneous.

The government contends that Acuna lied to the agents and perjured himself on the witness stand. According to the government, immediately following the entry of the plea bargain, Acuna refused to talk with the agents. Subsequently, they interviewed him in his jail cell but he provided only limited information that was obviously false. Based on this interview, the government decided not to call Acuna as a witness because of a fear that he would not tell the truth. The government presented no evidence in support of these assertions at the sentencing hearing; therefore, these arguments are disregarded. However, the government further asserts that when the defense called Acuna, he testified falsely about his own conduct and that of his coconspirators.

The transcript of the plea hearing indicates that Acuna did not admit the truth of the overt acts alleged in the indictment at that time. However, the presentence report states,

A copy of the Superseding Indictment was shown to defendant with special attention being noted to the overt acts contained in Count I of the Superseding Indictment [Conspiracy to possess]. Defendant stated that the information contained [sic] was accurate. There was nothing in Count I of the Information that he wanted to change or alter.

The district court also found that Acuna's trial testimony contradicted tape recorded statements that he made to undercover agents during the course of the conspiracy. Based on this evidence, the district court's finding that Acuna's trial testimony was "clearly false and unworthy of belief" is not clear error. The fact that Acuna's attorney accurately described the content of his subsequent testimony does not change this conclusion. Neither does it indicate that the court's finding that Acuna breached his plea agreement was clearly erroneous.

 Acuna also argues that these findings must be clearly erroneous because the district court did not identify which portions of his testimony were false. He suggests that such findings are particularly important in this case because no obstruction of justice occurred unless the false statements pertain to the instant offense. However, a district court is not required to enumerate specifically which portions of a defendant's testimony are false to justify an enhancement for obstruction of justice. *United States v. Barbosa*, 906 F.2d 1366, 1370 (9th Cir.), *cert. denied*, 498 U.S. 961, 111 S.Ct. 394, 112 L.Ed.2d 403 (1990). The district court's factual findings underlying its application of section 3C1.1 were not clearly erroneous.

 The issue subject to de novo review is whether Acuna's breach of his plea bargain is an obstruction of justice within the meaning of section 3C1.1. At the plea hearing, Acuna told the court that he would tell the truth at trial. Three days later, he gave testimony that the district court found to be "clearly false and unworthy of belief." The commentary to section 3C1.1 lists "providing materially false information to a judge or magistrate" as an example of the type of conduct that warrants an enhancement for obstruc-

tion of justice. U.S.S.G. § 3C1.1 comment. (n. 3(f)). In addition, violation of a plea bargain warrants a sentence enhancement for obstruction of justice. *United States v. Duke,* 935 F.2d 161, 162 (8th Cir.1991).

■ Acuna argues that even if his trial testimony was false, it was not an obstruction of justice related to his "instant offense" because he only testified falsely about his coconspirators' conduct. However, section 3C1.1 applies when "a defendant attempts to obstruct justice in a case closely related to his own, such as that of a codefendant." *United States v. Bernaugh,* 969 F.2d 858, 861 (10th Cir.1992); *cf. United States v. Morales,* 977 F.2d 1330, 1331 (9th Cir.1992) (concluding that refusal to testify at codefendant's trial after receiving immunity is obstruction of justice), *cert. denied,* —— U.S. ——, 113 S.Ct. 1399, 122 L.Ed.2d 772 (1993).

### III

■ Acuna argues that the district court erred in failing to reduce his sentence by two levels for acceptance of responsibility pursuant to section 3E1.1 of the Guidelines. The district court's determination of this issue is reviewed for clear error. *Ford,* 989 F.2d at 352. The sentencing judge's evaluation of Acuna's acceptance of responsibility "is entitled to great deference on review." *Id.*

The commentary to section 3E1.1 states that "[c]onduct resulting in an enhancement under § 3C1.1 ... ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply." U.S.S.G. § 3E1.1 comment. (n. 4). The district court found that when Acuna testified, "[h]e minimized his own involvement and attempted to gain acquittal for the other defendants by stating that they knew nothing of his criminal activity." This type of false testimony, which is inconsistent with an acceptance of responsibility, does not present the type of extraordinary case contemplated by Application Note 4. *See United States v. Lato,* 934 F.2d 1080, 1083 (9th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 271, 116 L.Ed.2d 224 (1991). The district court did not commit clear error in denying a

two level reduction for acceptance of responsibility.

### IV

■ Acuna argues that the district court erred by calculating the base offense levels for his conspiracy and possession counts under section 2D1.1, instead of section 2D1.11. We review the district court's application of the sentencing guidelines de novo, and its underlying findings of fact for clear error. *United States v. Myers,* 993 F.2d 713, 714 (9th Cir.1993).

Section 1B1.2 of the Guidelines indicates that the offense of conviction should be used to select the guideline for sentencing. *Id.* at 716. Acuna's offenses of conviction were possession of listed chemicals and conspiracy to possess listed chemicals with intent to manufacture methamphetamine. The possession offenses were violations of 21 U.S.C. § 841(d)(2), and Appendix A lists section 2D1.11 as the applicable guideline. The conspiracy offense was a violation of 21 U.S.C. § 846, and the applicable guideline is section 2D1.4. However, section 2D1.4 states, "If a defendant is convicted of a conspiracy ... involving a controlled substance, the offense level shall be the same as if the object of the conspiracy or attempt had been completed." On its face, section 2D1.4 appears not to apply to Acuna's conspiracy count because it involved a listed chemical instead of a controlled substance. However, section 2X1.1, which applies to conspiracies not covered by a specific offense guideline, also directs that the base offense level be calculated using the "guideline for the substantive offense." U.S.S.G. § 2X1.1(a). Thus, whether Acuna's conspiracy falls within the scope of section 2D1.4, as suggested by the statutory index, or is covered by the catchall guideline in section 2X1.1, the result is the same. Either way, Acuna's conspiracy count should be calculated using section 2D1.11. This is also consistent with the most recent version of the Guidelines, which now treat conspiracy to possess directly under section 2D1.11. *See* U.S.S.G. § 2D1.11 & App. C, amend. 447 (1993).

The district court applied section 2D1.11, but then concluded that the cross-reference in section 2D1.11(c)(1), required the offense level to be calculated using section 2D1.1. Section 2D1.11(c)(1) provides, "If the offense involved unlawfully manufacturing a controlled substance, or attempting to manufacture a controlled substance unlawfully, apply § 2D1.1 [manufacture] or § 2D1.4 [attempt], as appropriate, if the resulting offense level is greater than that determined above." The district court applied the offense level calculated under section 2D1.1 because it was greater than the offense level calculated under section 2D1.11.

Acuna argues that the district court erred in applying the section 2D1.11(c)(1) cross-reference because he did not manufacture or attempt to manufacture methamphetamine. Nothing in the record suggests that Acuna manufactured methamphetamine, so the manufacturing part of the cross-reference does not apply. *See United States v. Steward,* 7 F.3d 164 (9th Cir.1993). However, the district court determined that Acuna attempted to manufacture methamphetamine. For this finding to stand there must be evidence that Acuna intended to manufacture methamphetamine and that he took a substantial step towards the completion of that objective. *See United States v. Davis,* 960 F.2d 820, 826–27 (9th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 210, 121 L.Ed.2d 150 (1992); *United States v. Taylor,* 716 F.2d 701, 711 (9th Cir.1983) *(Taylor).*

Acuna does not challenge the district court's finding that he intended to manufacture methamphetamine. Indeed, his guilty plea to conspiracy to possess listed chemicals with intent to manufacture methamphetamine affirmatively forecloses Acuna from denying that he intended to manufacture methamphetamine. Instead, Acuna contends that there is no evidence that he took any substantial step towards manufacturing. The district court decided that the purchase of precursor chemicals was a substantial step towards the manufacture of methamphetamine. The district court also determined that Acuna took other substantial steps. But the district court did not identify these other steps; therefore, we cannot review whether they were substantial.

The issue, then, is whether Acuna's purchase of precursor chemicals constitutes a substantial step towards the manufacture of methamphetamine. "In order to constitute a substantial step, conduct must go beyond mere preparation and must be strongly corroborative of the firmness of a defendant's criminal intent." *United States v. Smith,* 962 F.2d 923, 930 (9th Cir.1992), *quoting United States v. Buffington,* 815 F.2d 1292, 1301 (9th Cir.1987) (internal quotations omitted). The conduct "must be necessary to the consummation of the crime and of such nature that a reasonable observer, viewing it in context, could conclude beyond a reasonable doubt that it was undertaken in accordance with a design to violate the statute." *United States v. Runco,* 873 F.2d 1230, 1232 (9th Cir.1989) (citation and internal quotations deleted).

Acuna's conduct consists of ordering, purchasing, and possessing 10 gallons of hydriodic acid, 10 pounds of ephedrine, 15 gallons of hydriodic acid, 3 liters of methylamine, 40 pounds of thionyl chloride, 25 pounds of phenylacetic acid, and 10 pounds of red phosphorus; negotiating for the purchase of glassware; and promising to sell methamphetamine at $10,000 per pound. This conduct "brand[s] the enterprise as criminal and [is] incompatible with innocent purposes." *United States v. Mazzella,* 768 F.2d 235, 240 (8th Cir.) *(Mazzella), cert. denied,* 474 U.S. 1006, 106 S.Ct. 528, 88 L.Ed.2d 460 (1985). We have previously implied in dicta that the purchase of a precursor chemical would not constitute an attempt to manufacture. *See Taylor,* 716 F.2d at 712 n. 6. However, that dictum does not apply to this case. In the *Taylor* hypothetical, the defendant purchased a single precursor chemical. In contrast, Acuna purchased all the chemicals necessary to produce methamphetamine, negotiated for the purchase of glassware, and promised to sell the finished product. Acuna's conduct was strongly corroborative of the firmness of his criminal intent, and was sufficient to constitute a substantial step towards the manufacture of methamphetamine. *See Mazzella,* 768 F.2d at 240.

Acuna responds by arguing that his conduct was mere preparation and did not constitute a substantial step. But the cases he cites do not help him. In *Buffington*, no attempt to rob a federal bank was found because the admissible evidence did not show whether the defendants intended to rob a federal bank, a state bank, or a nearby store. 815 F.2d at 1302. In *United States v. Candoli*, 870 F.2d 496 (9th Cir.1989), there was no attempt to commit arson because the defendants abandoned their intent before taking a sufficiently substantial step towards the commission of the crime. *Id.* at 503. In *United States v. Still*, 850 F.2d 607 (9th Cir.1988), we found that the defendants' actions were less indicative of an intent to rob a bank than were those of the defendants in *Buffington*. *Id.* at 610. In contrast to these cases, as previously discussed, Acuna's conduct is strongly corroborative of his intent to manufacture methamphetamine.

The conclusion that Acuna's offense involved an attempt to manufacture methamphetamine invokes the section 2D1.11(c)(1) cross-reference, which directs the district court to calculate Acuna's offense level according to section 2D1.4. This appears to complete a circle, because the analysis of the conspiracy count began with section 2D1.4. However, this second look at section 2D1.4 involves attempt to manufacture methamphetamine, not conspiracy to possess listed chemicals; therefore the result is different.

Section 2D1.4 states that "the offense level shall be the same as if the object of the ... attempt had been completed." This directs that Acuna's offense level be calculated under section 2D1.1, the guideline for unlawful manufacturing. It follows that because the offense level is greater if calculated according to section 2D1.1 than it is if calculated according to section 2D1.11, the district court did not err in calculating Acuna's sentence.

In the past, we have applied section 2D1.1 to this type of offense directly, *see United States v. Cook*, 938 F.2d 149, 152 (9th Cir. 1991), avoiding the need to engage in the extensive analysis of this case. Under the version of the Guidelines in effect at the

time, this application made good sense because section 2D1.11 did not exist. However, with the adoption of section 2D1.11, the Sentencing Commission has caused us to apply a different analysis.

**AFFIRMED.**