# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
           *Plaintiff-Appellee,*

v.

TERRANCE HOFUS,
           *Defendant-Appellant.*

No. 09-10076

D.C. No.
3:08-cr-00022-LRH-
VPC-1

OPINION

Appeal from the United States District Court
for the District of Nevada
Larry R. Hicks, District Judge, Presiding

Argued and Submitted
January 11, 2010—San Francisco, California

Filed March 19, 2010

Before: John T. Noonan, Michael Daly Hawkins and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Hawkins;
Dissent by Judge Noonan

4555

## COUNSEL

Michael Powell, Office of the Federal Public Defender, Reno, Nevada, for the defendant-appellant.

Elizabeth Olson, Office of the United States Attorney, Reno, Nevada, for the plaintiff-appellee.

## OPINION

HAWKINS, Circuit Judge:

Appellant Terrance Hofus ("Hofus") appeals his jury trial conviction for one count of attempting to coerce and entice a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b). He contends the jury instructions inadequately defined the "substantial step" requirement and failed to require unanimity as to what constituted that substantial step. Hofus also argues that the district court erroneously excluded testimony from his expert that Hofus valued the sexual texting "in fantasy alone" and was unlikely to actually engage in sex with the minor victim. We affirm his conviction for the reasons set forth below.

## FACTS AND PROCEDURAL HISTORY

In February 2008, several 12 to 16-year-old girls had a sleep over party in Nevada. During the party, two of the young girls, M.M. and B.T., took nude photos of themselves and sent them by cell phone to a 15-year-old boy, T.H. Although unclear exactly how Hofus learned about the photos,[1] after the party B.T. began receiving text messages from a number she did not recognize. From that number, Hofus sent her various sexual messages and told her that unless she and M.M. met with him to do sexual things, he would send the nude photos to everyone they knew and post them on the Internet.

After the party, M.M. also exchanged text messages with Hofus, thinking that he was the 15-year-old boy. When these texts became very sexual, M.M. told her mother and older sister about them. M.M.'s sister called the number and told him to stop calling her 14-year-old sister. Hofus also left several voicemail messages on M.M.'s phone.

---

[1]Hofus had recently acquired the phone number from a 13-year-old boy.

Although it was later determined that Hofus's phone did not give him the ability to actually view the nude photos, he made the girls believe he had seen them and had them in his possession. For example, Hofus sent B.T. a text that he was at a Kinko's copy shop and had found a way to enlarge cell phone images to poster size: "think that if we printed up the 2 of u girls and hung them up at the high skol that it wud help u keep u r promise to me they look hot there a lot detail big."

B.T. eventually told a teacher about the problem, and, ultimately, the FBI took over the investigation. Special Agent Anna Brewer took M.M.'s cell phone and downloaded the voicemail messages from Hofus. Brewer also took B.T.'s cell phone and found several text messages from Hofus, including one which said "I am ok with not having sex it wud help me get rid of the urge if we could just talk like the 3 of us did before that's all want" and another which said "come on babe lets do this u know u want to be with me."

Agent Brewer posed as B.T. and began texting with Hofus. Brewer recorded all text messages and voicemails that were received on B.T.'s phone. Brewer asked for the pictures back; Hofus asked what she was willing to do to get them. Later, Hofus apparently became suspicious and asked her "Why are u talking 2 the police" and "some one knows a detective." Hofus asked B.T. to promise that whatever they might do would stay between them — "no friends parents police." He insisted on talking to B.T. on the phone to arrange a meeting ("We need to talk on phone how far can u travel" "we need to talk tonight or forget it").

With her parents' permission, B.T. spoke to Hofus on a monitored phone and arranged to meet him at the Parklane movie theater to see the movie Juno. Following their conversation, he continued to send her sexually explicit texts asking about her sexual experiences.

On March 16, the FBI set up surveillance at the Parklane movie theater. At noon, Hofus sent a text asking, "Are u

going to let me taste u naked." He also sent a message suggesting B.T. go to the McDonald's near the theater instead. When the agents went to the McDonalds, they noticed Hofus sitting on a bus stop bench across the street from the theater, using his cell phone, and arrested him.

Hofus was charged with a single count of attempted coercion and enticement of a minor to engage in sexual activity in violation of 18 U.S.C. § 2422(b). After a four-day trial, a jury found him guilty, and he was sentenced to 130 months imprisonment.

## DISCUSSION

### I. Jury Instructions

We review the district court's formulation of jury instructions for an abuse of discretion, *United States v. Ortega*, 203 F.3d 675, 684 (9th Cir. 2000), and we review de novo whether the instructions misstated or omitted an element of the charged offense. *United States v. Stapleton*, 293 F.3d 1111, 1114 (9th Cir. 2002). The "relevant inquiry is whether the instructions as a whole are misleading or inadequate to guide the jury's deliberation." *United States v. Frega*, 179 F.3d 793, 806 n.16 (9th Cir. 1999).

### A. Substantial Step

[1] Because Hofus was charged with an attempted violation of § 2422, the government had to prove that Hofus not only intended to commit a crime, but that he took a "substantial step" toward its commission. *See Braxton v. United States*, 500 U.S. 344, 349 (1991); *United States v. Acuna*, 9 F.3d 1442, 1447 (9th Cir. 1993). We have previously explained the "substantial step" concept: "the defendant's actions must go beyond mere preparation, and must corroborate strongly the firmness of the defendant's criminal intent." *United States v. Nelson*, 66 F.3d 1036, 1042 (9th Cir. 1995);

*see also id.* (" 'The conduct must be necessary to the consummation of the crime and of such nature that a reasonable observer, viewing it in context, could conclude beyond a reasonable doubt that it was undertaken in accordance with a design to violate the statute.' ") (quoting *Acuna*, 9 F.3d at 1447). In *Nelson,* we also described the substantial step as demonstrating a "true commitment" towards completing the crime, *id.* at 1042 (internal quotation marks omitted), as an "appreciable fragment" of a crime, *id.* (internal quotation marks omitted), and as "unequivocally demonstrating that the crime will take place unless interrupted by independent circumstances," *id.*

**[2]** In this case, the district court instructed the jury that it must find Hofus "took some action that was a substantial step toward bringing about the persuasion, inducement, or enticement to engage in sexual activity," and, in accordance with *Nelson* and the language of Ninth Circuit Model Criminal Instruction 5.3, that "mere preparation is not a substantial step." The court also instructed that to constitute a substantial step, "the defendant's conduct must have: one, advanced the criminal purpose charged; and, two, verified the existence of that purpose." *See United States v. Goetzke*, 494 F.3d 1231, 1235-36 (9th Cir. 2007) (quoting *Walters v. Maass*, 45 F.3d 1355, 1358-59 (9th Cir. 1995)).

Hofus, on the other hand, requested an instruction using different language from *Nelson*, requiring "an action of such substantiality that, unless frustrated, the crime would have occurred." *See Nelson*, 66 F.3d at 1042. Hofus contends the district court abused its discretion by refusing his instruction because it was a correct statement of the law under *Nelson*.

A defendant, however, is not entitled to an instruction with wording of his own choosing. *United States v. Ferris*, 719 F.2d 1405, 1408 (9th Cir. 1983). Rather, the question before us is not whether the instruction Hofus posed was correct, but whether the instruction actually given was misleading or inad-

equate to guide the jury's decision. *United States v. Tatoyan*, 474 F.3d 1174, 1179 (9th Cir. 2007) (quoting *United States v. Fernandez*, 388 F.3d 1199, 1246 (9th Cir. 2004)).

**[3]** Here, the court's instruction was an accurate description of the law, *see Acuna*, 9 F.3d at 1447; *Nelson,* 66 F.3d at 1042, and mirrored the definition of substantial step in the model instruction, Model. Crim. Jury Instr. 9th Cir. 5.3. Moreover, we have approved this instruction as adequate to inform the jury of the requirements on the charge of attempt. *See United States v. Mincoff*, 574 F.3d 1186, 1196-97 & n.2 (9th Cir. 2009).

**[4]** Hofus argues that more guidance was needed on the facts of this case because he had never actually met the young girls. He urges that his case is thus more like the Seventh Circuit case of *United States v. Gladish*, 536 F.3d 646 (7th Cir. 2008) (sexual conversations online with stranger, including discussions of possibly meeting in person, insufficient substantial step), than the Ninth Circuit case of *United States v. Goetzke*, 494 F.3d 1231 (9th Cir. 2007) (defendant initiating conversation with young boy he knew, describing sexual acts, and proposing a rendevous is sufficient substantial step). However, neither case is particularly helpful to Hofus because (1) both of those cases involved challenges to the sufficiency of the evidence and not whether the jury was adequately instructed on the substantial step concept, and (2) in both cases, the defendant had only exchanged written correspondence or electronic chat with the intended victim, and had not taken the additional step of traveling to a prearranged meeting place, as Hofus did here. There was unlikely to be any confusion about "substantial step" on the facts of this case. *See United States v. Meek*, 366 F.3d 705, 720 (9th Cir. 2004) (online sexual dialog and travel to meet the minor at a local school sufficient substantial step); *see also United States v. Brand*, 467 F.3d 179, 202-04 (2d Cir. 2006) (increasingly sexually explicit conversations, arranging meeting and travel to

prearranged meeting place sufficient evidence of substantial step).

**[5]** In sum, the instructions given by the district court were adequate to guide the jury, and the court did not abuse its discretion by refusing Hofus's proposed wording.

## B. Unanimity

Hofus also argues that the district court erred by failing to specifically instruct the jury that it must unanimously agree as to what constituted the substantial step. *See Richardson v. United States*, 526 U.S. 813, 817 (1999) (jury must unanimously find the government has proven each element).[2] We review this claim for plain error because Hofus did not specifically request a unanimity instruction below and did not discuss this alleged problem with the court. Although Hofus argues that he adequately preserved the issue because his proposed instruction included the standard language from the model instruction, we have held that Federal Rule of Criminal Procedure 30 requires a defendant to state with adequate specificity the grounds for an objection to a jury instruction before the jury retires, and that a " 'defendant's mere proposal of an alternate instruction does not satisfy Rule 30's standard of specificity.' " *United States v. Peterson*, 538 F.3d 1064, 1071 (9th Cir. 2008) (quoting *United States v. Elias*, 269 F.3d 1003, 1017-18 (9th Cir. 2001)).

Here, although Hofus's proposed instruction happened to contain the specific unanimity language, there was no discussion with the court about the need for such language or the

---

[2]Model Instruction 5.3 provides "Second, the defendant did something that was a substantial step toward committing the crime, with all of you agreeing as to what constituted the substantial step." Model Crim. Jury Instr. 9th Cir. 5.3 (2003). Although the court otherwise followed the model instruction, it did not specifically include the unanimity language. However, the court did give a general unanimity instruction.

failure of the court's instruction to include it. Rather, the instructional dispute the district court was asked to resolve involved whether to further define "substantial step" as discussed in Section I.A. above, and how to define the underlying Nevada sex crime. Thus, to succeed on his claim, Hofus must establish (1) an error that is (2) plain or obvious, and (3) affects his substantial rights; if these conditions are satisfied, we may exercise our discretion to correct the error if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Peterson*, 538 F.3d at 1071-72 (internal quotation marks and alteration omitted).

**[6]** Hofus cannot satisfy this standard, because the court's failure to give a specific unanimity instruction was not error. Although the language is included in the model instruction, we have never held that jurors must unanimously agree as to which particular act by the defendant constitutes a substantial step. Rather, the jury must unanimously agree that the substantial step requirement has been satisfied, as it was properly instructed.

As the Supreme Court explained in *Schad v. Arizona*, an indictment may allege that a defendant committed an offense by one or more specified means, but "[w]e have never suggested that in returning general verdicts in such cases the jurors should be required to agree upon a single means of commission, any more than the indictments were required to specify one alone." 501 U.S. 624, 632 (1991) (Souter, plurality); *see also id.* at 649 ("It has long been the general rule that when a single crime can be committed in various ways, jurors need not agree upon the mode of commission." ) (Scalia, J., concurring).

Hofus attempts to rely on *Richardson v. United States* for the principle that "a jury in a federal criminal case cannot convict unless it unanimously finds that the Government has proved each element." 526 U.S. 813, 817 (1999). *But Richardson* is not inconsistent with *Schad*, and, in fact, cites it for

the principle that "a federal jury need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element, say, which of several possible means the defendant used to commit an element of the crime." *Id.*

In *Richardson*, the Court concluded that, as a matter of statutory interpretation, a particular statute treated each violation in a "series of violations" as a separate element, and that the jury must therefore be unanimous as to each element. *Id.* at 824. But the jury must only unanimously agree that each element has been satisfied, as *Richardson* illustrates:

> Where, for example, an element of robbery is force or the threat of force, some jurors might conclude that the defendant used a knife to create the threat; others might conclude he used a gun. But that disagreement — a disagreement about means — would not matter as long as all 12 jurors unanimously concluded that the Government had proved the necessary related element, namely, that the defendant had threatened force.

*Id.* at 817.

Our law is consistent with these principles. *See United States v. Lyons,* 472 F.3d 1055, 1068-69 (9th Cir. 2007) (citing *Schad* and holding no need for jury to unanimously agree whether defendant's conduct was a "scheme to defraud" versus a "false promises" scheme because both types of schemes violate the same underlying statutory offense)*; United States v. Garcia,* 400 F.3d 816, 819-20 (9th Cir. 2005) (relying on *Schad* to hold jury did not need to unanimously agree whether defendant was liable as principal or as aider and abetter, because these were alternative means of committing single crime); *United States v. McCormick*, 72 F.3d 1404, 1409 (9th Cir. 1995) (affirming conviction for false statement on passport application in absence of specific unanimity instruction,

and noting that "there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict" (internal quotation marks omitted)). Thus, here, even if different jurors found that different actions constituted Hofus's substantial step, the differences, like those in the *Richardson* hypothetical, are differences only of means.[3]

**[7]** We therefore conclude that the district court did not err by omitting a requirement of unanimity as to which specific act or actions constituted the substantial step, because it is not required under *Schad.* Thus, there was no error in the instruction, plain or otherwise.

## II.   Expert Testimony

Hofus also argues that the district court erred by limiting the scope of his expert's opinion and thereby prevented him from presenting a defense. We review a district court's decision to exclude expert testimony for an abuse of discretion. *United States v. Campos*, 217 F.3d 707, 710 (9th Cir. 2000).

At trial, Hofus's expert, Dr. McEllistrem, made a proffer of his testimony, which included his opinion that (1) there was no "grooming"[4] activity in this case, as you would normally

---

[3]This case is likewise distinguishable from situations in which we have held specific unanimity instructions are required due to the potential of jury confusion when the facts could permit multiple ways of satisfying not only a single element of a charged crime, but could permit finding entirely separate offenses directed at different victims, different times, etc. *See, e.g.*, *United States v. Payseno*, 782 F.2d 832, 837 (9th Cir. 1986) (specific instruction required where evidence indicated three acts of extortion directed at separate victims, occurring at different times and locations and involving different methods of communicating threats); *United States v. Echeverry*, 698 F.2d 375, 377 (9th Cir. 1983) *as modified*, 719 F.2d 974 (9th Cir. 1983) (specific instruction required because evidence of two separate conspiracies separated by several months).

[4]Dr. McEllistrem explained that the term "grooming" in sex offender cases refers to a "process where offenders engage in certain behaviors and

find with sex offenders, because the girls were already sexually experienced; (2) that Hofus valued the text communications as "fantasy alone"; and (3) that Hofus was not a hebophile (having an abnormal sexual interest in youthful women with some secondary sexual characteristics) or a pedophile (having an abnormal sexual interest in prepubescent children).

The court ruled that the doctor could testify about "grooming," his opinion that Hofus was not a hebophile, and generally about fantasy-based communications. However, the court agreed with the government that pedophilia was irrelevant because the case involved only post-pubescent girls, and that Dr. McEllistrem could not express any opinion concerning Hofus's actual intent at the time specific acts occurred. When prompted by the government to clarify how that ruling applied to the "fantasy" testimony, the court ruled:

> Well, he certainly cannot testify that in the final stages of this text messaging that Mr. Hofus was operating under a fantasy because the opinion that he was operating under a fantasy suggests that there was no intent to persuade, induce, or entice these girls and, one, it's frankly irrelevant to that, and two, it's confusing to the jury, so I would not allow that.

The defense then asked whether Dr. McEllistrem could testify that it was unlikely Hofus would act on the intentions expressed in his texts. The court concluded that this was also irrelevant, and that the expert could not testify whether Hofus was likely to engage in the ultimate sexual activity with the minor.

---

mental games to secure victims, make them comfortable with sexual activity, and then engage them with sex contact"; he also described it as a "very slow, methodical process to take someone who is extremely naive and innocent about sexual matters, gain trust, gain a comfort level around sexual ideas, and then engage them sexually."

**[8]** The district court properly excluded these aspects of Dr. McEllistrem's testimony as irrelevant under our precedent in *Goetzke*. 494 F.3d at 1236. The underlying statute requires an attempt to persuade, induce, entice, or coerce a minor to engage in criminal sexual activity. 18 U.S.C. § 2422(b). However, we made clear in *Goetzke* that there is a difference in attempting to *persuade, induce, entice or coerce* a minor to engage in sexual activity and actually attempting to *engage* in sexual activity with the minor. *Id.* As we explained in *Goetzke*: "The latter is an attempt to achieve the physical act of sex, for which physical proximity is integral. But the former is an attempt to achieve the mental act of assent, for which physical proximity can be probative but is not required." *Id.* In *Goetzke*, we also relied on a number of cases from other circuits which have similarly focused on the intended effect of the communication rather than the defendant's intent to commit the underlying sexual activity:

> *Brand*, 467 F.3d at 202 (holding that a conviction under § 2422(b) requires a finding only of an intent to entice, not an intent to perform the sexual act following the persuasion); *United States v. Murrell*, 368 F.3d 1283, 1286 (11th Cir. 2004) (stating that the underlying conduct that § 2422(b) criminalizes is the persuasion of the minor, rather than the sexual act itself); *United States v. Bailey*, 228 F.3d 637, 639 (6th Cir. 2000) (observing that "Congress has made a clear choice to criminalize persuasion and the attempt to persuade, not the performance of the sexual acts themselves.").

*Goetzke*, 494 F.3d at 1236; *see also United States v. Dwinells*, 508 F.3d 63, 70 (1st Cir. 2007) (interpreting *Goetzke* as holding that government does not need to prove intent to commit sexual act, but only intent to persuade, and agreeing with that conclusion).

**[9]** Thus, like numerous other circuits, we have recognized a distinction between the intent to persuade or attempt to per-

suade a minor to engage in a sex act and the intent to actually commit the criminal sex act itself. As the Sixth Circuit elaborated in *Bailey*:

> While it may be rare for there to be a separation between the intent to persuade and the follow-up intent to perform the act after persuasion, they are two clearly separate and different intents and the Congress has made a clear choice to criminalize persuasion and the attempt to persuade, not the performance of the sexual acts themselves. *Hence, a conviction under the statute only requires a finding that the defendant had an intent to persuade or to attempt to persuade.*

228 F.3d at 639 (emphasis added); *see also United States v. Thomas*, 410 F.3d 1235, 1244 (10th Cir. 2004) ("Section 2422(b) requires only that the defendant intend to entice a minor, not that the defendant intend to commit the underlying sexual act.").

**[10]** Thus, expert testimony as to whether Hofus was likely to actually have sex with B.T. was irrelevant to whether Hofus violated § 2422. Similarly, the proffered testimony that Hofus valued the sexual texting with B.T. "in fantasy alone" necessarily implies that Hofus lacked the intent to *actually* have sex with B.T., but does not make it more likely or not that he attempted to *entice* or *persuade* her to agree to an illegal sex act. *See Goetzke*, 494 F.3d at 1236 (describing § 2422(b) violation as an attempt to achieve the mental act of assent, as opposed to an attempt to engage in intercourse). The district court also correctly noted that this portion of the expert's proposed testimony would likely confuse the jury as to which intent it was required to find Hofus had possessed.

Hofus relies heavily on *United States v. Gladish*, 536 F.3d 646 (7th Cir. 2008), which reversed a conviction under § 2422(b) for insufficient evidence. The defendant there had

engaged in sexual chats with an agent posing as a minor girl and discussed the possibility of meeting, but made no firm arrangements; the court concluded that the defendant had not taken a "substantial step" towards committing the crime. *Id.* at 650. The Seventh Circuit then added that the district judge should have permitted an expert witness to testify on the defendant's behalf: "The psychologist could not have been permitted to testify that the defendant did not intend to have sex with 'Abagail,' but he could have testified that it was unlikely, given the defendant's psychology, that he would act on his intent." *Id.* at 650-51.

Of course, we are bound to follow *Goetzke* rather than *Gladish.* But even so, we do not find the *Gladish* analysis particularly persuasive. It is, of course, dicta, because the court had already reversed the conviction. But more importantly, the Seventh Circuit does not explain *how* the proffered testimony would have been relevant to the issue before the jury. *Id.* at 650-51. Moreover, *Gladish*'*s* conclusion appears somewhat inconsistent with an observation the court makes earlier in the opinion, where the court notes that making arrangements to meet can satisfy the substantial step element even though "it is always possible that had the intended victim been a real girl the defendant would have gotten cold feet at the last minute and not completed the crime even though he was in position to do so." *Id.* at 648-49. If the defendant could have been properly convicted of an attempted violation of § 2242 for traveling to meet the victim—even if he might have backed out—then it is difficult to see how testimony that he was *likely* to get cold feet would affect guilt of an attempted violation under the statute.

Finally, even if the Seventh Circuit were correct that expert testimony would have been relevant and helpful on the facts of *Gladish* because only internet banter was involved, the situation here is factually distinct because Hofus took the additional steps of proposing a meeting, agreeing to a place, and arriving at a place near that destination. Thus, the district

court was correct that the expert testimony would be more confusing than helpful in Hofus's case, which was much more the typical sting operation. *See id.* at 648 (discussing typical arrest).

[11] The proffered expert testimony in Hofus's case appears directed solely at the propensity to actually commit the underlying sexual act, which was not before the jury. But even if the "fantasy alone" testimony was offered to show an absence of intent to "persuade, induce or entice" (as opposed to an absence of intent to commit the underlying sexual act, which is discussed above), then it goes to the ultimate issue the jury must decide, and was properly excluded under Rule 704(b). Fed. R. Evid. 704(b) ("No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto."). To say that Hofus meant the texting only as fantasy is simply another way of saying he did not really intend to entice or persuade the young girls, which is precisely the question for the jury. If the jury accepted Dr. McEllistrem's testimony that Hofus engaged in texting B.T. "in fantasy alone," it would necessarily follow that Hofus did not possess the requisite mens rea to violate § 2422. Such an opinion would thus run afoul of Rule 704(b)'s prohibition on such testimony.[5]

Hofus further claims that the limitations on expert testimony violated his due process rights and his ability to present a defense. However, Dr. McEllistrem was still allowed to tes-

---

[5]Although Hofus complains that the expert's testimony could not simultaneously be irrelevant *and* too relevant, the difference is in the purpose for which it is offered. If offered to show Hofus's propensity to commit the underlying sexual act, it is irrelevant under *Goetzke*; but if offered on the ultimate issue of intent to persuade or entice under § 2422, it is prohibited by Rule 704 (as even *Gladish* recognized). *See* 536 F.3d at 651.

tify that Hofus lacked the characteristics of a hebophile, and he also testified extensively about the large number of people who engage in sexual texting or chat rooms for pure fantasy. Hofus's attorney was then able to argue to the jury in closing that Hofus was one of those people, that it was just fantasy, and that in Hofus's mind there was no real intent, that it was all divorced from reality.[6]

[12] We therefore conclude that the district court did not abuse its discretion by limiting Dr. McEllistrem's testimony, and that Hofus was not denied the opportunity to present a defense.

**AFFIRMED**.

---

NOONAN, Circuit Judge, dissenting:

As the opinion applying *Goetzke* accurately states, the crime is the attempt to persuade a minor to engage in sexual intercourse with the defendant. As the opinion also accurately states, an expert is forbidden to testify to the existence of the defendant's intent to commit the crime that is charged. Fed. R. Evid. 704(b). No rule, however, prohibits the expert from testifying to the existence or absence of the defendant's intent to commit the uncharged crime of attempting to have sexual intercourse with a minor. That testimony was what the defense offered, and it was excluded.

---

[6]Although Hofus's opening brief mentions in passing that the district court did not allow any testimony regarding pedophilia, it does not contain any argument on this issue and we may consider it waived. *See United States v. Loya*, 807 F.2d 1483, 1486-87 (9th Cir. 1987). In any event, the district court properly excluded this testimony as irrelevant since Dr. McEllistrem adequately explained the difference between pedophilia and hebophilia, and this case only involved post-pubescent girls.

It was excluded because it was said to be irrelevant: it wasn't the crime charged. But it was highly relevant. If the defendant did not intend to have intercourse with the minor, he was unlikely to be attempting to persuade her to have intercourse. What the expert would testify to is a circumstance, a circumstance that makes it considerably less likely that the crime that has been charged actually took place.

The expert testimony was also excluded because it would confuse the jury. It would have required the jury to distinguish between the intent to attempt to persuade and the intent to have sexual intercourse. The distinction may be difficult to grasp but it is essential to the case. The prosecution succeeds only by proving an intent to attempt. If the jury is able to grasp the essence of the prosecution's case, the jury can distinguish between the ultimate intent to be proved by the prosecution and the intent the expert would testify to.

I do not believe that our per curiam in *Goetzke* and Judge Posner's opinion in *Gladish* need to be read in conflict. Judge Posner quotes *Goetzke* at length and favorably. Both opinions agree that Rule 704(b) blocks expert testimony on the intent to commit the charged crime. Judge Posner goes on to point out how the expert may testify to a circumstance that makes it unlikely that the defendant did commit the charged crime.

In our case, the jury could have believed or not believed the expert that Hofus only fantasized about actual sexual intercourse. It was vital to the defense to have the expert's testimony before the jury. To deny the defense the right to present it was to deny the right of the accused to present a defense. The denial was prejudicial to the defense and violative of the Sixth Amendment.