**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

AUG 02 2016

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 14-50190 |
| Plaintiff - Appellee, | D.C. No. 2:12-cr-01062-GAF-1 |
| v. | |
| MICHAEL LESLIE SNYDER, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Central District of California
Gary A. Feess, District Judge, Presiding

Argued and Submitted March 9, 2016
Pasadena, California

Before: PREGERSON, PAEZ, and NGUYEN, Circuit Judges.

Michael Snyder appeals his conviction and sentence for eight counts of theft

of government property in violation of 18 U.S.C. § 641, and one count of making

and using a false statement in violation of 18 U.S.C. § 1001(a)(3). We have

jurisdiction under 28 U.S.C. § 1291, and we affirm.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

**1.**     We review for an abuse of discretion the district court's dismissal of an indictment for pre-indictment delay, and we review a finding of Fifth Amendment prejudice for clear error. *United States v. Gregory*, 322 F.3d 1157, 1161 (9th Cir. 2003); *see also United States v. Corona-Verbera*, 509 F.3d 1105, 1112 (9th Cir. 2007).

Snyder argues that during the five-year period between when the government became aware of his fraud and when it filed the indictment, Snyder's mother passed away. Snyder contends that from 2007 to 2008, when the alleged thefts occurred, he lived with his mother, who would have testified if he had been indicted earlier. At that time, Snyder's nephew also lived in the apartment and was the designated caretaker for Snyder's mother. Snyder's nephew, a defense witness, testified that Snyder primarily lived with his wife at that time, in a separate residence.

Snyder has not demonstrated that the absence of his mother's testimony rises to the level of Fifth Amendment prejudice. Although he posits that his mother would have offered compelling testimony on his behalf, "when a defendant fails to make a specific showing as to what a deceased witness would have said, any argument of prejudice is pure conjecture." *Corona-Verbera*, 509 F.3d at 1113. Snyder also failed to demonstrate that the testimony of his mother, who

2

purportedly suffered from the early stages of dementia prior to her death in 2009, was distinct from and more probative than his nephew's testimony. Because Snyder's allegations of prejudice are speculative, we need not examine the government's reasons for the delay in filing. *See United States v. Barken*, 412 F.3d 1131, 1134 (9th Cir. 2005) ("The second part of the test applies only if the defendant has demonstrated actual prejudice."). The district court did not err in denying Snyder's motion to dismiss the indictment for pre-indictment delay.

**2.**     Under *Batson v. Kentucky*, 476 U.S. 79 (1986), and *Hernandez v. New York*, 500 U.S. 352 (1991) (plurality opinion), a defendant may challenge the prosecution's discriminatory use of peremptory challenges. When a defendant fails to object to the prosecution's explanation for its peremptory strikes, we review for plain error. *United States v. Contreras-Contreras*, 83 F.3d 1103, 1105 (9th Cir. 1996). Snyder does not challenge the court's *Batson* findings. Instead, he argues that the district court erred when it ruled on Snyder's *Batson* challenge but failed to solicit the prosecution's explanation for its peremptory strikes against two other Latino jurors.

During jury selection, Snyder invoked *Batson*, asserting that the prosecution had struck a "third Latino" juror. The district court assumed without deciding that Snyder had made a prima facie showing that the prosecution's peremptory strike

improperly discriminated on the basis of ethnicity, and the court asked the prosecution to provide an explanation. The prosecutor provided a race-neutral explanation, and she noted that she did not know the prospective juror's race or ethnicity on the basis of his name or appearance. Both the district court and Snyder's counsel agreed that they also could not identify the juror's ethnicity. The district court assumed for the purposes of the motion that the prospective juror was Latino and found that there was insufficient evidence to support a *Batson* challenge.

Snyder's counsel, however, did not notify the district court that she sought to have the court question the prosecutor regarding the strikes against the two prior, prospective Latino jurors. Nor did she object to the court's finding that Snyder had not met his burden under *Batson*. Under these circumstances, we fail to see any error, plain or otherwise, in the district court's failure to conduct a *sua sponte Batson* analysis of the exclusion of the prior two Latino jurors.

**3.**    We review for an abuse of discretion the court's formulation of jury instructions. *United States v. Hofus*, 598 F.3d 1171, 1174 (9th Cir. 2010). We review those instructions in context and as a whole to determine whether they are misleading or inadequate to guide the jury's deliberations. *United States v. Garcia-Rivera*, 353 F.3d 788, 792 (9th Cir. 2003). We review de novo whether the

4

instructions omit or misstate the elements of a statutory crime. *Hofus*, 598 F.3d at 1174. When the defendant fails to object to an instruction before the district court, we review for plain error. *United States v. Backman*, 817 F.3d 662, 665 (9th Cir. 2016). Snyder's challenge fails to establish that the district court erred.

In *United States v. Carrier*, we held that to establish a willful, false statement in violation of 18 U.S.C. § 1001, the government must prove beyond a reasonable doubt that the defendant acted "deliberately and with knowledge." 654 F.2d 559, 561 (9th Cir. 1981). At the time of Snyder's trial, *Carrier's* interpretation of section 1001's intent requirement was binding precedent in this circuit, and the district court so instructed the jury. We have upheld convictions when the district court's intent jury instruction used the language provided in *Carrier*. *United States v. Tatoyan*, 474 F.3d 1174, 1182 (9th Cir. 2007).

Snyder argues that intervening case law calls into question *Carrier's* definition of "willfulness." He contends that *Bryan v. United States* abrogated *Carrier* because *Bryan* held that "a willful act is one undertaken with a bad purpose" with respect to the Firearms Owners' Protection Act, 18 U.S.C. § 922(a)(1)(A). 524 U.S. 184, 191–95 (1998) (internal quotation marks omitted). **Id.** He additionally suggests that the Court's non-binding, non-precedential, one-line remand in *United States v. Ajoku*, 134 S. Ct. 1872 (2014) (vacating a

5

conviction for violation of 18 U.S.C. § 1035), undermines our continued reliance on *Carrier* and *Tatoyan*.

We need not resolve this question because even if the instruction was erroneous, Snyder has failed to demonstrate that the alleged error affected his substantial rights. To demonstrate that an error affected Snyder's substantial rights, he must demonstrate that the error was prejudicial—that is, that there is "a reasonable probability that, but for [the error claimed], the result of the proceeding would have been different." *United States v. Alghazouli*, 517 F.3d 1179, 1190 (9th Cir. 2008) (alteration in original). Snyder has failed to do so.

Construing the trial evidence in the light most favorable to the verdict, a reasonable juror could have found that Snyder knowingly and willfully made a false statement regarding his marital status with the knowledge that his statement was false and his conduct unlawful. Snyder's redetermination application required the applicant to affirm: "I understand that anyone who knowingly lies or misrepresents the truth . . . is committing a crime which can be punished under Federal law, State law, or both. Everything on this document is the truth as best I know it." Marc Hammond, a Social Security Administration claims representative and operations supervisor, testified that he reviewed Snyder's application with Snyder at the time that Snyder completed and submitted it. As part of that process,

6

Hammond flagged for Snyder the form's advisory regarding truthful statements, and he instructed Snyder to read the advisory prior to signing the redetermination application. Additionally, weeks prior to submitting his redetermination application, Snyder had asked Social Security staff, "on behalf of a friend," what the impact of marrying an ineligible spouse would have on an SSI-recipient's eligibility. Moreover, Snyder himself admitted that he knew he "should have reported [his] marriage" to the Social Security Administration but did not because his wife was "making a lot of money" and he was "afraid [his] SSI benefits would be reduced[.]" On this record, it is not reasonably probable that a modified jury instruction would have produced a different result on Count 9.

**4.** Finally, Snyder contends that the district court erred in rejecting his proposed jury instruction defining "household." "A court commits reversible error when it fails to instruct the jury" on a defense theory if that theory is supported by law and if "there is evidence upon which the jury could rationally sustain the defense." *United States v. Daane*, 475 F.3d 1114, 1119 (9th Cir. 2007) (first quotation); *United States v. Boulware*, 558 F.3d 971, 974 (9th Cir. 2009) (second quotation). We do not require the district court to charge the jury on a theory of defense for which there is no evidentiary support.

Snyder's defense was that he maintained a household with his mother, not

his wife, at the time of the alleged thefts because his mother's apartment is where he contributed to the cost of household expenses. SSI regulations require a spouse's income be "deemed" to the claimant, which may affect the claimant's eligibility, as well as the amount of the claimant's benefits award. *See* 20 C.F.R. §§ 416.1160, 416.1163. Because the "deeming" regulations do not define "household," Snyder requested the court look to the definitions from regulations regarding in-kind or third-party support—which affect the *amount* of an award—when charging the jury on Snyder's "household" defense. *See* 20 C.F.R. §§ 416.1131–416.1133. Drawing on 20 C.F.R. § 416.1132(a), the court defined a household as "a personal place of residence." Snyder requested a more elaborate instruction, arguing that his household was also defined by where he paid a share of household and operating expenses. *See id.* § 416.1132(c)(4). The in-kind support regulations defined household expenses as "monthly expenditures for food, rent, mortgage, property taxes, heating fuel, gas, electricity, water, sewerage, and garbage collection service" averaged over the previous twelve months. *Id.* § 416.1133.

Aside from the statements made on Snyder's redetermination application, there was no other evidence that he paid rent at either residence. Snyder's ex-wife paid all household expenses at her house, and Snyder contended that he contributed

to his mother's food costs.  Snyder provided no evidence that he contributed to his mother's non-food household expenses.  Snyder also was not listed as a tenant on the lease for his mother's apartment or for his wife's house from December 2007 through December 2008, and he did not demonstrate that he was liable for rent at either residence.

Noting that Snyder had not provided evidence that he was liable to any landlord for a portion of either his mother or his wife's rent, the court held that the extended definitions in sections 416.1132(c) and 416.1133 were inapplicable.  In light of the dearth of evidence offered in support of Snyder's household defense, the district court did not err in declining to instruct the jury on a superfluous definition.  Moreover, the definition of "household," as provided in the court's instruction number 13, was sufficient for Snyder to argue his "household" defense.

**AFFIRMED.**