# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.

GARY DONALD BARKEN,
        *Defendant-Appellant.*

No. 03-50441

D.C. No.
CR-02-01147-SVW-
02

OPINION

Appeal from the United States District Court
for the Central District of California
Stephen V. Wilson, District Judge, Presiding

Argued June 7, 2004
Submitted June 13, 2005
Pasadena, California

Filed June 27, 2005

Before: Dorothy W. Nelson, John R. Gibson,* and
Susan P. Graber, Circuit Judges.

Opinion by Judge Gibson

---

*The Honorable John R. Gibson, Senior Circuit Judge, United States
Court of Appeals for the Eighth Circuit, sitting by designation.

**COUNSEL**

Leonard Sharenow, Esq., Los Angeles, California, for the defendant-appellant.

Dorothy Kim, Esq., Assistant United States Attorney, Los Angeles, California, for the plaintiff-appellee.

**OPINION**

GIBSON, Circuit Judge:

Gary Donald Barken appeals his jury trial conviction and sentence for unlawful transportation and disposal of hazard-

ous material without a permit in violation of 42 U.S.C. § 6928(d)(1) and (d)(2)(A) (codifying the Resource Conservation and Recovery Act, (RCRA)). He argues that the district court erred by denying his motion to dismiss the indictment for pre-indictment delay in violation of his due process rights under the Fifth Amendment and under Federal Rule of Criminal Procedure 48(b). He also alleges four sentencing errors. We affirm Barken's conviction and remand to the district court to consider the sentencing issues in accordance with *United States v. Booker*, 125 S. Ct. 738 (2005), and *United States v. Ameline*, No. 02-30326, 2005 WL 1291977 (9th Cir. June 1, 2005) (en banc) .

## FACTS

Barken was indicted on October 28, 2002, with eleven of the twenty-one counts relating to events that took place nearly five years earlier. In 1997, Barken became president of a family-owned business, Barken's Hard Chrome, located in Compton, California. The company's business is chrome plating and metal finishing. Beginning in the spring of that year, Barken spoke with Michelle Totten, the environmental facilities manager for Philadelphia Gear, a gear manufacturing company. Totten contacted Barken because Philadelphia Gear had decided to stop its copper plating business, and Totten was charged with finding a home for the equipment and chemicals the company would no longer need. She first tried to find a buyer, but when she had no success, Philadelphia Gear decided to look for a company that would take the equipment and chemicals at no cost. Barken agreed to take everything, and Philadelphia Gear and Barken's Hard Chrome entered into a written agreement concerning the transfer of ownership and relocation of the items. Philadelphia Gear hired a company to pump the chemicals out of the equipment and separate them into waste product and good product. The chemicals were pumped into blue 55-gallon drums. Philadelphia Gear agreed to keep the waste product, and Barken's Hard Chrome was to get only good product.

On November 4, 1997, a crew of people hired by Barken's Hard Chrome and Barken's Hard Chrome employee, Saul Reyna, met Totten at Philadelphia Gear. The blue drums containing good product were loaded on to a Ryder truck that Barken's Hard Chrome had rented and Reyna was driving. Totten did not see a placard on the truck that would identify the chemicals the truck would be transporting. Totten was concerned about the lack of proper labeling, but Reyna assured her that there would be no problem. Reyna drove the Ryder truck, with the drums aboard, back to Barken's Hard Chrome. Later that day, Barken told his office manager, Cori Ames, that he had no use for the chemicals in the drums and that he was going to dump them that night. She overheard him instruct Reyna to remove the labels from the drums. Barken was involved in a personal relationship with Ames at the time, but it was a tumultuous one: Barken fired and rehired Ames twenty to twenty-five times between November 1997 and July 1998 when she left the company's employment. The firings most often were related to their relationship.

On November 5, 1997, the Riverside County Fire Department contacted the county's Investigations and Emergency Response Unit concerning blue barrels found at three desert locations: eight were found at the first site, twenty-three at the second site, and nine at the third. Each drum had writing on the top, some of which said "HCL," "caustic liquid," and "cupral copper." One drum at each of the first two sites had leaked some of its contents onto the soil. Investigators collected samples and field tested the liquid in the barrels to determine pH levels. Tests resulted in readings as low as zero and as high as thirteen, numbers which are classified as corrosive hazardous waste under RCRA, the statute under which Barken was convicted. One of the drums was labeled with an address that led investigators to Philadelphia Gear.

Following its investigation, Riverside County charged Barken with six felony counts under California environmental laws for transporting and disposing of forty drums of hazard-

ous waste. He was arrested on those charges in February 1998. A settlement was reached in which the criminal charges against Barken were dismissed, Barken Enterprises (the corporate name of Barken's Hard Chrome) pleaded guilty to a single count and was sentenced to probation, and a civil consent judgment was entered in which the company paid approximately $80,000 for cleanup costs, penalty, and environmental education and enforcement. This comprehensive settlement took place on June 17, 1998.

On October 28, 2002, approximately five days before the federal statute of limitations expired, the government indicted Barken, Reyna, and Barken Enterprises on eleven counts in connection with the November 1997 events. The indictment originally included ten more counts and an additional defendant, and it alleged crimes that occurred between July 1998 and November 2001. The latter counts were severed for trial and later dismissed, on the government's motion, without prejudice. They are not at issue in this appeal.

On March 17, 2003, the court granted the government's motion to dismiss, without prejudice, all counts against the company and counts six through eight (concerning transportation without a manifest) against Barken and Reyna. The five-day trial against the remaining defendants Barken and Reyna began on March 25, 2003. Following the government's case in chief, Reyna successfully moved for a judgment of acquittal. The government had been precluded from introducing at trial statements attributed to Barken that implicated Reyna and another former employee. Barken also moved for a judgment of acquittal, but his motion was granted as to Counts 1 and 2 only. The jury returned a guilty verdict on each of the six remaining counts. Barken received concurrent twenty-four month sentences on each count.

The district court granted Barken's application to extend his time to file a notice of appeal, and he filed the notice on September 9, 2003. Although he argues that the indictment

against him should have been dismissed due to delay and that the district court committed sentencing errors, he does not challenge the sufficiency of the evidence.

## STANDARDS OF REVIEW

This court reviews a district court's denial of a motion to dismiss an indictment for preindictment delay, under both the Fifth Amendment's due process clause and Federal Rule of Criminal Procedure 48(b), for abuse of discretion. *United States v. Huntley*, 976 F.2d 1287, 1290 (9th Cir. 1992). Clear error is the standard for reviewing a district court's finding with respect to prejudice. *United States v. Doe*, 149 F.3d 945, 947-48 (9th Cir. 1998).

## I.

Barken argues vigorously against the injustice of this indictment, which resulted in his conviction for a single incident that had occurred nearly five years earlier. The same incident had been prosecuted by Riverside County in state court. In the state court case, the County, Barken, and Barken Enterprises entered into a global settlement that resolved both criminal and civil matters and resulted in the County's recovering more than it had spent in removing and cleaning up the barrels. Barken further argues that no federal interest was present in prosecuting him.

[1] The law does not support Barken's argument. An indictment is rarely dismissed because delay by the prosecution rises to the level of a Fifth Amendment due process violation. The well-settled test for determining whether a defendant's due process rights have been violated is in two parts. First, "a defendant must prove that he suffered actual, non-speculative prejudice from the delay," meaning proof that demonstrates exactly how the loss of evidence or witnesses was prejudicial. *United States v. Doe*, 149 F.3d 945, 948 (9th Cir. 1998) (quoting *United States v. Sherlock*, 962 F.2d 1349, 1353 (9th Cir.

1989)). The defendant's burden to show actual prejudice is heavy and is rarely met. *Id.* The second part of the test applies only if the defendant has demonstrated actual prejudice. *United States v. Manning*, 56 F.3d 1188, 1194 (9th Cir. 1995). In the second part, the delay is weighed against the reasons for it, and the defendant must show that the delay " 'offends those fundamental conceptions of justice which lie at the base of our civil and political institutions.' " *Doe*, 149 F.3d at 948 (quoting *Sherlock*, 962 F.2d at 1353-54).

Barken filed his motion to dismiss on March 4, 2003, three weeks before trial commenced. The district court heard argument and issued an oral ruling denying Barken's motion. Although the motion addressed four groups of evidence and two witnesses who were no longer available for Barken to introduce, the argument that preceded the ruling addressed only one witness, Nereo Prestegui. Prestegui was an employee of Barken's Hard Chrome until May 31, 1998. Some time after that, he moved to Mexico. Barken's counsel obtained an affidavit, allegedly signed by Prestegui, in which he admits that he and two other individuals abandoned the chemical drums and that neither Barken nor Reyna was involved in the offense. Prestegui's affidavit also stated that he had no intention of providing testimony in the case. Barken argued that, had the government not delayed indicting him, Prestegui would have been available and would have provided exculpatory testimony. Barken's counsel was unable to provide many answers to the district court's questions about Prestegui, and he said that an intermediary had obtained the affidavit because counsel did not know how or where to reach the witness.

The district court concluded that Prestegui would have been available for a deposition under Federal Rule of Criminal Procedure 15 and expressed doubt about the credibility of an inculpatory affidavit that was written after the statute of limitations had run against the affiant. Without addressing the cat-

egories of unavailable evidence or the other unavailable witness, the district court denied the motion.

The evidence Barken addressed in his motion included an American Express receipt from a Denny's restaurant which was no longer available because the restaurant's retention policy calls for such receipts to be kept for six months. The government alleged that Barken and Reyna ate a meal at that restaurant the night they dumped the drums in the desert, while Barken asserted that his brother had used the company credit card that night and signed the receipt.[1] Barken also complained that the drums themselves had been destroyed by the Riverside County investigators, which prevented him from showing that his fingerprints were not on the drums. The chemical samples taken from the drums the day they were discovered also had been destroyed by the Riverside County investigators. Finally, the documents concerning how Philadelphia Gear handled the chemicals and the records detailing the Ryder truck rental by Barken's Hard Chrome had not been preserved.

The other witness Barken mentioned in his motion was Joseph Vermetti, another former company employee. Vermetti allegedly knew and could identify "Mario," a person who, Barken asserted, had participated in the disposal of the drums with Prestegui. Vermetti died in January 2001.

[2] While Barken argued that his defense was substantially prejudiced by the absence of this testimonial and non-testimonial evidence, case law holds that the statute of limitations is typically adequate protection for a defendant's rights. *E.g.*, *United States v. Pallan*, 571 F.2d 497, 499 (9th Cir. 1978).[2]

---

[1]Louie Barken, the brother, has a criminal history involving convictions for drug possession and sales. He testified at trial that he, Mario, and Prestegui disposed of the drums of chemicals and that they ate a meal at Denny's that evening.

[2]The statute of limitations for all the counts in the indictment is five years. 18 U.S.C. § 3282 (2000).

In this case, Barken's arguments do not go beyond speculation. The most compelling argument he asserts is that he was prejudiced by the absence of the drums and the chemical samples taken from them, but the force of the argument is diminished by Barken's failure to argue on appeal the insufficiency of evidence of RCRA violations. Moreover, where adequate substitutes exist for missing non-testimonial evidence, prejudice does not exist. *United States v. Cederquist*, 641 F.2d 1347, 1351 (9th Cir. 1981). Many other items of evidence were introduced at trial concerning the drums and their contents, including photographs, analyses, and reports. Barken has not met the "heavy burden" placed on him to show actual, non-speculative prejudice. The district court did not commit clear error in finding no prejudice.

[3] Although Barken devotes significant time to arguing the unfairness and lack of justification for the government's delay, and the government provides little explanation, this court need not examine the reasons for delay if Barken has not met his burden of demonstrating prejudice. *Manning*, 56 F.3d at 1194. Accordingly, the district court did not abuse its discretion in denying the motion to dismiss for violation of Barken's due process rights.

## II.

[4] Barken also sought dismissal of his indictment under Federal Rule of Criminal Procedure 48(b), which states:

> The court may dismiss an indictment, information, or complaint if unnecessary delay occurs in:
>
> (1) presenting a charge to a grand jury;
>
> (2) filing an information against a defendant; or
>
> (3) bringing a defendant to trial.

As Barken concedes, Rule 48(b) comes into play only after a defendant has been placed under arrest. *United States v. Mays*, 549 F.2d 670, 674 n.4 (9th Cir. 1977). Barken was arrested on the federal charges in October 2002 and tried five months later, which obviously does not constitute delay. However, Barken argues that the measuring date should be the date on which he was arrested on *state* charges for the same conduct. That arrest was in February 1998. He offers no support for his argument, and we find none.

Even if the delay between arrest and trial had been nearly five years, the court would have dismissed the indictment under Rule 48(b) only in extreme circumstances, after exercising caution and after forewarning the government of the consequences of further delay. *United States v. Sears, Roebuck & Co., Inc.*, 877 F.2d 734, 737-38 (9th Cir. 1989). The record shows no such forewarning. The district court did not abuse its discretion in denying Barken's motion to dismiss under Rule 48(b).

## III.

Shortly after this case was submitted, the Supreme Court issued its opinion in *Blakely v. Washington*, 124 S. Ct. 2531 (2004). By way of letters pursuant to Federal Rule of Appellate Procedure 28(j), Barken's counsel raised the Sixth Amendment as an additional ground to his already-existing challenge to Barken's sentence. This court withdrew submission of Barken's appeal on September 10, 2004, pending further guidance from the Supreme Court in *United States v. Booker*, 125 S. Ct. 738 (2005). The case was not resubmitted following the issuance of *Booker* because the judges of this circuit voted to vacate the panel opinion and grant rehearing en banc in *United States v. Ameline*, 401 F.3d 1007 (9th Cir. 2005). The en banc opinion has been issued, No. 02-30326, 2005 WL 1291977 (9th Cir. June 1, 2005), and this case is now resubmitted so that we may consider Barken's alleged sentencing errors in light of *Booker* and *Ameline*.

Barken originally raised five sentencing issues. The first three involve enhancements to his sentence under various provisions of the United States Sentencing Guidelines. He objects to a two-level enhancement under § 2Q1.2(b)(1)(B)[3] on the ground that the record does not support a finding of actual contamination. Barken objects to a four-level enhancement under § 2Q1.2(b)(4) that was imposed because he failed to obtain a permit. He argues that the enhancement amounts to double-counting.

Barken further objects to the two-level enhancement he received under § 3B1.1 for being a manager. He asserts the enhancement is improper because one of the people he managed was acquitted at trial. The presentence investigation report recommended against the enhancement because of the acquittal, and the district court made the finding by relying on testimony that the court held inadmissible at trial.

Barken argues that he was entitled to a downward departure under application note 8 to § 2Q1.2 because the district court did apply that departure under application note 5. Finally, Barken objects to the district court's refusal to grant him a two-level reduction in his sentence under § 3E1.1 for acceptance of responsibility.

Although Barken timely objected to these issues at sentencing, he did not do so on Sixth Amendment grounds until the case was on appeal. Because several of these issues involve post-conviction findings of fact by the district court, Barken's constitutional challenge is one that we review for plain error. *Ameline*, 2005 WL 1291977, at *1. That standard allows an error to be corrected that was not raised at trial if it was in fact an error, it was plain, and it affected the defendant's substantial rights. If those three conditions are met, the district court

---

[3]Technically, the district court applied the four-level upward adjustment called for by the specific offense characteristic in § 2Q1.2(b)(1)(B), and departed downward two levels under application note 5 to that guideline.

has the discretion to correct the error if it seriously affected the fairness, integrity, or public reputation of judicial proceedings. *United States v. Olano*, 507 U.S. 725, 732-36 (1993).

**[5]** The district court committed an error that was plain by applying the Guidelines as mandatory, a practice that is no longer valid under *Booker*. *Ameline*, 2005 WL 1291977, at *5. Thus, we must turn to the question of whether the error affected Barken's substantial rights, "that is, whether the outcome of [Barken's] sentencing was affected by the erroneous enhancement of [his] sentence on the basis of judge-made findings in the mandatory guidelines regime." *Id.* It is for Barken to demonstrate a reasonable probability that the district court would have imposed a different sentence had the court known the guidelines were merely advisory. However, because the record does not indicate what the district court would have done, we must remand for the district court to answer that question in accordance with the procedures set forth in *Ameline*. *Id.* at *6, *11.

## *CONCLUSION*

We affirm Barken's conviction and we remand his sentence in accordance with *United States v. Booker*, 125 S. Ct. 738 (2005), and *United States v. Ameline*, No. 02-30326, 2005 WL 1291977 (9th Cir. June 1, 2005) (en banc). In light of our disposition, appellant's motion to remand is DENIED as moot.

Convictions AFFIRMED; sentence REMANDED.