
**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 08-50492 |
| Plaintiff - Appellee, | D.C. No. 3:06-cr-00206-JAH-2 |
| v. | |
| DAVID SCAGGS, AKA Sly, | MEMORANDUM [*] |
| Defendant - Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 08-50493 |
| Plaintiff - Appellee, | D.C. No. 3:06-cr-00206-JAH-4 |
| v. | |
| LEONARD SCAGGS, AKA Ricky, | |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Southern District of California
John A. Houston, District Judge, Presiding

Argued and Submitted March 2, 2010
Pasadena, California

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Before: RYMER and WARDLAW, Circuit Judges, and KENNELLY,[**] District Judge.

David Scaggs ("David") and Leonard Scaggs ("Leonard") appeal their convictions by a jury for first degree murder in violation of 18 U.S.C. § 1111. The charges arise from the January 1993 robbery and murder of Mark Smith at the 32nd Street Naval Station in San Diego. Both defendants were sentenced to life imprisonment.

Defendants raise a number of issues on appeal. Both defendants argue that the trial court erred in denying their motions to dismiss for pre-indictment delay. David challenges the denial of his motion to suppress his confession and the admission of evidence of another crime. Both defendants argue that the trial court erred in denying their motions for severance, and David challenges the admission of evidence that he contends contravened *Bruton v. United States*, 391 U.S. 123 (1968). Finally, Leonard challenges a supplemental instruction given by the trial court in response to a jury question during deliberations.

We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

**1. Pre-indictment delay**

A motion to dismiss based on pre-indictment delay requires a defendant to

---

[**] The Honorable Matthew F. Kennelly, United States District Judge for the Northern District of Illinois, sitting by designation.

show, first, that he "suffered actual, non-speculative prejudice from the delay." *United States v. Doe*, 149 F.3d 945, 948 (9th Cir. 1998) (internal quotation marks and citation omitted). Defendants contend that the thirteen-year delay between the crime and their indictment denied them the opportunity to identify witnesses and examine forensic evidence at the crime scene, and they argue that by the time they were charged, witnesses could no longer recall details, and some law enforcement personnel involved in the investigation had passed away or retired.

The district court did not abuse its discretion in finding that the defendants failed to show actual prejudice. First, the defendants offered nothing to suggest that helpful forensic evidence likely would have been available had they been indicted in 1993. Second, "[g]eneralized assertions of the loss of memory, witnesses, or evidence are insufficient to establish actual prejudice," *United States v. Manning*, 56 F.3d 1188, 1194 (9th Cir. 1995), and that is all the defendants offered. *See also United States v. Sherlock*, 962 F.2d 1349, 1354 (9th Cir. 1989) (mere potential for memory lapses insufficient). Third, they failed to show that the fact that some law enforcement officers were unavailable prejudiced them. Because defendants did not show actual prejudice, there is no need to assess the reasons for the prosecution's delay. *United States v. Barken*, 412 F.3d 1131, 1134 (9th Cir. 2005).

**2.** *Miranda*

David contends that the district court should have suppressed his statement because his *Miranda* waiver was unknowing and involuntary. His first argument is that his waiver was unknowing because he was not told that he had a right to speak with a lawyer before questioning or that he could terminate questioning at any time. The relevant inquiry is "whether the warnings reasonably convey to a suspect his rights as required by *Miranda*." *Duckworth v. Eagan*, 492 U.S. 195, 203 (1989) (internal quotation marks and citation omitted); *see also, California v. Prysock,* 453 U.S. 355, 359 (1981) ("[N]o talismanic incantation [is] required to satisfy [*Miranda's*] strictures.").

We reject David's argument that the warnings were inadequate. The investigator who questioned David did not tell him in so many words that he had a right to speak to an attorney before questioning. But advice of that right can be inferred from the investigator's statement that David had the right to have counsel appointed before questioning. *See, e.g., United States v. Connell*, 869 F.2d 1349, 1352 (9th Cir. 1989); *cf. Florida v. Powell*, ___ U.S. ___, 2010 WL 605603, at * 8 (Feb. 23, 2010) (warnings adequate where "in combination" they convey right to have an attorney present at all times). In addition, because the investigator advised David that he had the right to remain silent, his failure to state that David could

terminate questioning at any time did not render the *Miranda* waiver unknowing. "[A] defendant need not be informed of a right to stop questioning after it has begun." *United States v. Lares-Valdez*, 939 F.2d 688, 689 (9th Cir. 1991).

David also argues that his *Miranda* waiver was involuntary because the investigator asked if he was a religious man, and when he replied in the affirmative, the investigator said, "Well, if you're a religious guy, now is the time to tell the truth." We disagree. An appeal to a suspect's religious beliefs does not render a confession involuntary unless his will was overborne. *United States v. Miller*, 984 F.2d 1028, 1032 (9th Cir. 1993). This brief reference did not overbear David's will. Even after this exchange, David continued to deny involvement in the homicide. Rather, it was not until the investigator played Leonard's taped interview that David began to confess.

## 3. Other act evidence

David contends that the trial court erred by failing to exclude evidence regarding an armed robbery in Coronado two days after the murder of Mark Smith. The evidence included testimony about the robbery itself and testimony that David was arrested after being found in an automobile with a gun under his seat that was determined to be the same gun used to shoot Mark Smith.

David contends that the district court should have excluded evidence of the

5

robbery – as contrasted with evidence that he was arrested with the gun – under Federal Rules of Evidence 403 and 404(b). Even if the evidence were improperly admitted, it would not entitle David to a new trial, because "it is more probable than not that the erroneous admission of the evidence did not affect the jury's verdict." *United States v. Gallenardo*, 579 F.3d 1076, 1081 (9th Cir. 2009) (internal quotation marks and citation omitted). The evidence against David was quite strong even without regard to the other-crime evidence. The evidence included David's voluntary confession, in which he admitted that the gun was his and described how he used it to rob and kill Mark Smith, and testimony by an accomplice about the planning and commission of the robbery and murder and that the defendants had made two other robbery attempts on the night of Smith's murder. For these reasons, admission of the Coronado robbery evidence, even if erroneous, does not warrant reversal.

**4.    Severance / *Bruton***

The district court did not abuse its discretion in denying both defendants' motions for severance. Leonard was not unfairly prejudiced by being tried jointly with David, despite his arguments that the evidence against David was stronger and that the jury might not be able to see past their sibling relationship. *See United States v. Hernandez*, 952 F.2d 1110, 1116 (9th Cir. 1991). There is no basis to

6

believe that the jury was unable or unwilling to follow the trial judge's instruction to give each defendant separate consideration.

David and Leonard each gave a confession that implicated the other. The district court did not err, however, in finding that the government's redactions from each defendant's statement of references to the other cured any *Bruton* problem. *See Richardson v. Marsh*, 481 U.S. 200, 208-09 (1987); *United States v. Hoac*, 990 F.2d 1099, 1105-07 (9th Cir. 1993).

On cross-examination and redirect of the investigator who took David's statement, Leonard's counsel and the prosecutor each elicited a brief reference to Leonard's statements regarding David's involvement: a statement by Leonard that David and another accomplice had gotten out of the car they were in just before the robbery, and testimony that Leonard had been "forthright" because "he implicated his brother." David's counsel did not object, but the potential problem was brought to the trial judge's attention by the prosecutor in the first instance and by Leonard's counsel in the second, and the judge did not take curative action. Any error, however, was harmless in light of the other compelling evidence of David's guilt. *See United States v. Gillam*, 167 F.3d 1273, 1277 (9th Cir. 1999).[1]

---

[1] We conclude that the cumulative effect of any error in admitting the Coronado robbery evidence and the claimed *Bruton* error was likewise harmless.

### 5.     Supplemental jury instruction

Leonard also seeks a new trial based on his contention that a supplemental instruction to the jury during its deliberations misstated the requirements for felony murder.

The trial court instructed the jury that a defendant is guilty of felony murder if he, or another participant whom he aided and abetted, unlawfully killed the victim, and this occurred in the knowing and willful perpetration of the crime of robbery.  The court also instructed the jury that a defendant could be found guilty if he knowingly and intentionally aided another person to commit robbery and did so before the robbery was completed.  The closing argument of Leonard's counsel focused on his contention that Leonard was not part of the group that had planned and carried out the robbery.

During deliberations, the jury sent the trial court a question in which it made reference to the aiding and abetting instruction's requirement that the defendant act before the crime was completed.  The jury asked the court to "define when the crime was completed.  Is the escape considered part of the crime?"  Leonard objected to the giving of any supplemental instruction.  After considering the parties' arguments, the trial court instructed the jury that

[t]he crime of robbery continues beyond the immediate scene of the

robbery and necessarily encompasses the escape. The crime is completed when the robber's concern of being apprehended is no longer imminent or have arrived [sic] at a point of temporary safety. You should consider these responses or definitions along with the entirety of [the aiding and abetting instruction] and all of the other instructions provided to you.

The judge's supplemental instruction that the crime of robbery includes escape was legally correct. *See United States v. Dinkane*, 17 F.3d 1192, 1199 (9th Cir. 1994). Leonard argues on appeal, however, that the supplemental instruction allowed the jury to convict him of felony murder even if it found that he joined the robbery only during the escape, after the murder had been committed. He argues by analogy to California's felony murder rule that an accomplice must aid and abet the underlying felony at or before the time of the killing. *See People v. Pulido*, 15 Cal. 4th 715, 723, 63 Cal. Rptr. 2d 625 (1997). Assuming the federal rule is the same, however, the flaw was in the felony murder instruction, which did not require the defendant to have joined the crime before the victim was killed. Leonard did not object to the felony murder instruction and has not appealed from it, and thus no issue regarding that instruction is properly before us.

For this reason, the district court did not abuse its discretion in denying Leonard a new trial on account of the supplemental instruction.

**AFFIRMED.**