FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

DANIEL MURPHY COSTON,
    *Plaintiff-Appellant*,

v.

ANDREW NANGALAMA; RONALD
HALE, Licensed Vocational Nurse,
    *Defendants-Appellees*,

and

VICTOR DUC; TROY BRIMHALL; D.
BERCHTOLD; J. BAL; PREET SAHOTA,
    *Defendants*.

No. 19-16450

D.C. No.
2:10-cv-02009-
MCE-EFB

OPINION

Appeal from the United States District Court
for the Eastern District of California
Morrison C. England, Jr., District Judge, Presiding

Argued and Submitted May 3, 2021
Pasadena, California

Filed September 15, 2021

Before:  John B. Owens and Kenneth K. Lee, Circuit
Judges, and Michael H. Simon,[*] District Judge.

Opinion by Judge Simon

---

**SUMMARY**[**]

---

### Prisoner Civil Rights

The panel reversed the district court's judgment
following a jury trial, and remanded, in an action brought by
a California state prisoner pursuant to 42 U.S.C. § 1983
against a prison doctor and nurse alleging deliberate
indifference to medical needs, in violation of the Eighth
Amendment.

After a correctional officer found morphine pills in
Plaintiff's cell, Defendants terminated Plaintiff's
prescription for those pills without tapering, despite the risk
of withdrawal.  The district court instructed the jury to defer
to Defendants' asserted security justification.  On appeal,
Plaintiff argued, among other things, that the district court
erred by giving the jury a "deference instruction."

The panel held that Defendants did not draw a plausible
connection between a security-based policy or practice and
the challenged decision to terminate Plaintiff's morphine

---

[*] The Honorable Michael H. Simon, United States District Judge for
the District of Oregon, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It
has been prepared by court staff for the convenience of the reader.

prescription without tapering. The panel stated that although it is reasonable for a prison to want to prevent "pill hoarding" by prisoners, had Defendants simply followed the prison's mandatory policy for narcotic medications, Plaintiff's pill hoarding would not have occurred. This fact broke any plausible connection between a security-based policy or practice and the medical decision being challenged. Thus, because a deference instruction should not be routinely given in all medical care cases and the threshold requirement of a plausible connection for giving such an instruction was not present in this case, it was error to give that instruction.

The panel further concluded that the instructional error was not harmless. Plaintiff introduced substantial evidence that the prison did not act pursuant to a security-based policy and that the prison had several less drastic alternatives available, including Direct Observation Therapy, under which a prisoner must be observed taking the medication by both the nurse who delivers it and the correctional officer who escorts the nurse.

## COUNSEL

Alberto de Diego Carreras (argued) and Amaris Montes (argued), Certified Law Students; Aaron Littman, Attorney; Prisoners' Rights Clinic, Ninth Circuit Appellate Advocacy, UCLA School of Law, Los Angeles, California; Emily V. Cuatto (argued) and Barry R. Levy, Horvitz & Levy LLP, Burbank, California; Caitlin S. Weisberg, Kaye McLane Bednarski & Litt LLP, Pasadena, California; for Plaintiff-Appellant.

Amie C. McTavish (argued), Deputy Attorney General; Catherine Woodbridge, Supervising Deputy Attorney

General; Danielle F. O'Bannon, Senior Assistant Attorney General; Office of the Attorney General, Sacramento, California; for Defendants-Appellees.

## OPINION

SIMON, District Judge:

Daniel Coston, a California state prisoner, brought this federal civil rights action under 42 U.S.C. § 1983 against Dr. Andrew Nangalama and Nurse Randall Hale (Defendants), alleging deliberate indifference to Coston's medical needs in violation of the Eighth Amendment.[1] After a correctional officer found morphine pills in Coston's cell, Defendants terminated Coston's prescription for those pills without tapering, despite the risk of withdrawal. After a jury returned a verdict in favor of Defendants, the district court entered judgment. Coston appeals from that judgment, arguing that, among other things, the district court erred by giving the jury a "deference instruction." The district court instructed the jury to defer to Defendants' asserted security justification. We have jurisdiction under 28 U.S.C. § 1291. Because the district court's deference instruction violated established law under the facts presented and was not harmless, we reverse and remand for a new trial.

---

[1] The Eighth Amendment prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. A prisoner suffers cruel and unusual punishment when prison officials act with deliberate indifference to the prisoner's serious medical needs. *Edmo v. Corizon, Inc.*, 935 F.3d 757, 766 (9th Cir. 2019) (per curiam).

## I.

"We review de novo whether a district court's jury instructions accurately state the law, and we review for abuse of discretion a district court's formulation of jury instructions." *Hung Lam v. City of San Jose*, 869 F.3d 1077, 1085 (9th Cir. 2017); *see also Shorter v. Baca*, 895 F.3d 1176, 1182 (9th Cir. 2018). In addition, the "[u]se of a model jury instruction does not preclude a finding of error." *Shorter*, 895 F.3d at 1182 (quoting *United States v. Warren*, 984 F.2d 325, 327 n.3 (9th Cir. 1993)). "But if any error relating to the jury instructions was harmless, we do not reverse." *Spencer v. Peters*, 857 F.3d 789, 797 (9th Cir. 2017) (quoting *Wilkerson v. Wheeler*, 772 F.3d 834, 838 (9th Cir. 2014)).

"A party who objects to an instruction or the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds for the objection." Fed. R. Civ. P. 51(c)(1). "An objection to a jury instruction need not be formal, and a party may properly object by submitting a proposed instruction that is supported by relevant authority, so long as the proffered language is sufficiently specific to bring into focus the precise nature of the alleged error." *Hunter v. County of Sacramento*, 652 F.3d 1225, 1230 (9th Cir. 2011) (simplified) (citation omitted).

## II.

Coston, a man in his late 50s, is incarcerated at California State Prison-Sacramento (CSP-Sac). He suffers from a degenerative joint disease that causes chronic pain in his back, foot, and left shoulder. A prison physician prescribed morphine, a narcotic, to treat Coston's chronic pain. Defendant Dr. Nangalama refilled that prescription.

Defendant Hale, a licensed vocational nurse at the prison, administered Coston's morphine.

At CSP-Sac, morphine delivery requires "Direct Observation Therapy," under which a prisoner must be observed taking the medication by both the nurse who delivers it and the correctional officer who escorts the nurse. Correctional Officer Dana Boggs, however, testified that CSP-Sac medical staff, including Hale, sometimes left medication in empty cells when inmates were in the yard. Boggs added that he would often escort Hale on the "pill pass."

Less than two weeks after Boggs found two pills taped inside a magazine that Coston had given to Boggs to deliver to another inmate, Boggs searched Coston's cell and found 50 morphine pills, which Coston had hoarded in violation of prison policy. Boggs testified that the pills did not appear to have been "degraded," suggesting that Coston had not been hiding the pills in his mouth and corroborating Coston's account that Hale had simply left the pills in Coston's empty cell. Prison officials acknowledged that there "does appear to be a failure of the [Direct Observation Therapy] delivery method." Correctional officers confiscated the pills and formally disciplined Coston.

After correctional officers discovered the pills in Coston's cell, Nangalama discontinued Coston's morphine prescription. Nangalama, however, did not evaluate Coston before or even shortly after discontinuing that medication. Indeed, Nangalama did not see Coston again until several months later. Eleven days after Coston's medication was discontinued, a nurse found Coston on the floor of his cell with vomit near his head and heavily perspiring. Coston was taken to the prison emergency room. His increased blood pressure, nausea, and vomiting are symptoms of morphine

withdrawal. During the next several months, Coston repeatedly communicated to Defendants through healthcare requests, reporting his pain to be severe and debilitating.

Representing himself, Coston filed a lawsuit against Nangalama and Hale, among others, alleging deliberate indifference. In 2015, the case went to trial. After Coston rested his case, the district court granted Defendants' motion for judgment as a matter of law. On appeal, we vacated and remanded for a new trial. *See Coston v. Nangalama*, 669 F. App'x 371 (9th Cir. 2016). On remand, a second trial was held in November 2018, again with Coston representing himself.

Nangalama testified first, explaining that his decision to terminate Coston's morphine was motivated by medical and security concerns that arise when an individual does not take his medication as prescribed. These concerns include medical complications, overdose, and the risk that other prisoners might obtain another's medication. Nangalama was unable fully to recall the details of the prison's policy on medication management, which described the approved ways to prevent or remedy medication noncompliance.

Coston offered in evidence CSP-Sac's medication management policy. This policy instructs medical personnel to administer narcotics, like morphine, only through Direct Observation Therapy. The policy also establishes proper protocols for addressing noncompliance, including directions to use alternative methods of dispensing

medication. The district court, however, excluded the prison's medication management policy as irrelevant.[2]

Nangalama acknowledged that someone receiving Coston's prescribed morphine dosage would become dependent and that terminating morphine abruptly "can cause harm to the patient." Nangalama added that he would not usually terminate morphine suddenly, without tapering a patient off the medication. Nangalama explained that he did not do so here because he believed that Coston had not been taking the medication. Nangalama admitted, however, that he did not examine Coston or test his medication levels before terminating Coston's prescription. Nangalama added that he did not see Coston until almost four months after terminating Coston's prescription.

Relying on then-current Ninth Circuit model jury instructions, the district court gave the jury the following deference instruction: "In determining whether the defendant violated plaintiff's rights as alleged, you should give deference to prison officials in the adoption and execution of policies and practices that, in their judgment, are needed to preserve discipline and to maintain internal security." Coston had previously timely objected to this instruction, stating "I have an objection" and citing "Chase versus Dover." The district court noted Coston's objection but nevertheless read the deference instruction to the jury. The jury returned a general verdict in favor of Nangalama and Hale.

---

[2] At trial, Defendants presented no evidence that they employed, or even considered, any alternative methods for dispensing Coston's pain medication after correctional officers discovered the pills in Coston's cell.

III.

We have previously discussed the deference instruction, also known as a "*Norwood* instruction," based on *Norwood v. Vance*, 591 F.3d 1062 (9th Cir. 2010). *See Shorter*, 895 F.3d at 1182–87; *Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1257 (9th Cir. 2016); *Chess v. Dovey*, 790 F.3d 961, 972–75 (9th Cir. 2015).[3] In *Chess*, we stated:

> [W]e conclude that trial judges in prison medical care cases should not instruct jurors to defer to the adoption and implementation of security-based prison policies, unless a party's presentation of the case draws a plausible connection between a security-based policy or practice and the challenged medical care decision. No other circuit routinely requires this additional deference in all medical care cases, and neither should we.

*Chess*, 790 F.3d at 972 (footnote omitted).

Here, Defendants did not draw a plausible connection between a security-based policy or practice and the challenged decision to terminate Coston's morphine prescription without tapering. It is reasonable for a prison to want to prevent "pill hoarding" by prisoners. Had Defendants simply followed CSP-Sac's mandatory policy for narcotic medications, however, Coston's pill hoarding would not have occurred. This fact breaks any plausible connection between a security-based policy or practice and

---

[3] When Coston objected to the deference instruction and referred to "Chase versus Dover," we assume that he meant to say, "Chess versus Dovey."

the medical decision being challenged. Thus, because a deference instruction should not be routinely given in all medical care cases and the threshold requirement of a plausible connection for giving such an instruction was not present in this case, it was error to give that instruction.

In addition, in *Shorter*, we explained:

> [O]ur precedent should not be misread to suggest that jail officials are automatically entitled to deference instructions in conditions of confinement or excessive force cases brought by prisoners, or § 1983 actions brought by former inmates. . . . *We have long recognized that a jury need not defer to prison officials where the plaintiff produces substantial evidence showing that the jail's policy or practice is an unnecessary, unjustified, or exaggerated response to the need for prison security.*

*Shorter*, 895 F.3d at 1183 (emphasis added) (citations and footnote omitted). Thus, even when the threshold condition of a plausible connection is present, a deference instruction still should not be given when a prison's policy or practice is an unnecessary, unjustified, or exaggerated response to the security need.

Based on the prison's requirement of Direct Observation Therapy for morphine prescriptions, Nangalama's decision to terminate Coston's prescription without tapering, even if connected to a prison policy or practice related to a security need, would appear to be an unnecessary, unjustified, or exaggerated response to that need. Further, even if there were a genuine dispute of material fact over whether the prison's security policy or practice was not an unnecessary,

unjustified, or exaggerated response, the question of whether to give deference to prison officials should be left to the jury to decide, and they must be explicitly instructed to that effect. *See id*.; *see also Mendiola-Martinez*, 836 F.3d at 1257 (remanding with the instruction that the district court instruct the jury "that the County Defendants are not entitled to deference if the jury finds that their response to any security or escape threat Mendiola-Martinez posed was 'exaggerated'" (citation omitted)).

To summarize, Coston has presented substantial evidence that Nangalama's actions in discontinuing Coston's medication without tapering was not provided pursuant to a security-based policy or practice at CSP-Sac. Coston also offered in evidence the prison's medication management policy, which supports Coston's argument that Nangalama's actions were an unnecessary, unjustified, or exaggerated response.[4] Further, pill hoarding and the other risks that Nangalama described would not have been possible if the prison simply had followed its own required procedure of Direct Observation Therapy. If, however, Defendants can show at retrial a genuine dispute of material fact over whether Nangalama's actions were (1) taken because of a security-based policy or practice and (2) necessary, justified, and not exaggerated, then a deference instruction might be appropriate—but only if the jury also were instructed that whether deference should be given in these circumstances is a matter for the jury to decide.

---

[4] This conclusion also supports Coston's argument that the prison's medication management policy was, in fact, relevant and should not have been excluded.

IV.

Finally, we conclude that this instructional error was not harmless. As we explained in *Shorter*:

> An error in a jury instruction is harmless if defendants demonstrate that "it is more probable than not that the jury would have reached the same verdict had it been properly instructed." *Clem* [*v. Lomeli*], 566 F.3d [1177,] 1182 [(9th Cir. 2009)]. The defendants cannot make such a showing here. We have recognized that the *Norwood* instruction deals a "devastating blow" to the plaintiff's constitutional claims. *Harrington v. Scribner*, 785 F.3d 1299, 1307 (9th Cir. 2015). And it has been further suggested in a dissent that the instruction amounts to a "command to direct a verdict in favor of the government." *Norwood*, 591 F.3d at 1072 (Thomas, J., dissenting).

*Shorter*, 895 F.3d at 1190. Coston introduced substantial evidence that the prison did not act pursuant to a security-based policy and that the prison had several less drastic alternatives available, including Direct Observation

Therapy. Thus, as in *Shorter*, giving the deference instruction here was not harmless.[5]

**VACATED, REVERSED, AND REMANDED.**

---

[5] In his appeal, Coston raises several additional arguments, including challenges to comments made by the district court to the jury and the district court's decision not to grant a continuance or declare a mistrial after certain witnesses became unavailable before concluding their trial testimony. The circumstances surrounding these arguments are unlikely to arise again at retrial. Accordingly, we decline to address them.