**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

SEP 17 2024

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 22-10107 |
| Plaintiff-Appellee, | D.C. No. 3:19-cr-00010-MMD-CSD-1 |
| v. | |
| SAUD A. ALESSA, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Nevada
Miranda M. Du, Chief District Judge, Presiding

Argued and Submitted March 7, 2024
Las Vegas, Nevada

Before:  M. SMITH, BENNETT, and COLLINS, Circuit Judges.

Appellant Saud Alessa, his former boss Jeffrey Bowen, and his former girlfriend Jackie Hayes were indicted for an alleged conspiracy to help Alessa, a vacuum salesman at J&L Distributing ("J&L"), to evade taxes by recording his income as Hayes's.  In addition to the conspiracy count, 18 U.S.C. § 371, Alessa was also indicted on one count of tax evasion, 26 U.S.C. § 7201, and two counts of filing false tax returns, 26 U.S.C. § 7206(1).  Hayes, who pleaded guilty and cooperated with the Government, testified at Alessa's and Bowen's joint trial.

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Alessa was convicted on all four counts. He now appeals. We affirm.

**I**

"We review de novo whether a district court's jury instructions accurately state the law, and we review for abuse of discretion a district court's formulation of jury instructions." *Coston v. Nangalama*, 13 F.4th 729, 732 (9th Cir. 2021) (citation omitted). Instructional errors are generally subject to harmless error review. *United States v. Reed*, 48 F.4th 1082, 1088 (9th Cir. 2022).

All of Alessa's convictions required proof of willfulness. *United States v. George*, 420 F.3d 991, 999 (9th Cir. 2005); *United States v. Bishop*, 291 F.3d 1100, 1106 (9th Cir. 2002). Willfulness "requires the Government to prove that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty." *Cheek v. United States*, 498 U.S. 192, 201 (1991). "[C]arrying this burden requires negating a defendant's claim of ignorance of the law or a claim that because of a misunderstanding of the law, he had a good-faith belief that he was not violating any of the provisions of the tax laws." *Id*. at 202. Here, the district court's "willfulness" jury instruction tracked *Cheek* by stating that, "[i]n order to prove that the defendants acted 'willfully,' the government must prove beyond a reasonable doubt that they knew federal tax law imposed a duty on them, and that they intentionally and voluntarily violated that duty." Alessa argues that the district court should have given the

2

additional instructions that he proffered to flesh out what he contends that this willfulness element required in the context of this case. We conclude that the general instruction sufficed to allow Alessa to present his defense to the jury and that the district court did not abuse its discretion in declining to include the additional supplemental language that Alessa requested.

With respect to the conspiracy charge, the district court instructed the jury that "in order to prove whether a defendant acted with intent to defraud, the United States must prove beyond a reasonable doubt that the defendant did not have a good faith belief that he or she was complying with the law." However, the court gave no separate good faith instruction for the remaining counts. Alessa argues that the district court erred by failing to similarly instruct the jury on "good faith" with respect to the remaining counts. We disagree.

As *Cheek* recognizes, a defendant does not act "willfully" if he has a "good-faith misunderstanding of the law or a good-faith belief that [he] is not violating the law." *Cheek*, 498 U.S. at 201. Accordingly, "[g]ood faith reliance on a qualified accountant has long been a defense to willfulness in cases of tax fraud and evasion." *Bishop*, 291 F.3d at 1106. However, we have held that if "the trial court adequately instructs on specific intent, the failure to give an additional instruction on good faith reliance upon expert advice is not reversible error." *United States v. Dorotich*, 900 F.2d 192, 194 (9th Cir. 1990) (simplified).

3

For the false return counts, the district judge instructed the jury that the Government must prove beyond a reasonable doubt that Alessa "knew" his 2012 and/or 2013 tax returns "contained false information as to a material matter" and that he acted "willfully." This is materially indistinguishable from the jury instructions we upheld in *Dorotich*. *See* 900 F.2d at 194 ("In this case the district judge adequately instructed the jury that one element of the government's case was to prove specific intent beyond a reasonable doubt: that Dorotich filed the returns knowing that they were false.").

As to the tax evasion count, the district court instructed the jury that the Government had to prove beyond a reasonable doubt that "Alessa knew that federal income tax was owed for the years 1998 through 2007." The idea that Alessa *knew* he owed income taxes is inconsistent with a good faith belief— reasonable or unreasonable—that he did not owe such taxes. Consequently, there was no reversible error. *See United States v. Zuniga*, 6 F.3d 569, 572 (9th Cir. 1993) ("The trial court, however, is not required to give a particular instruction regarding the defense's theory of the case so long as the court's instructions adequately cover the subject. If the instructions adequately cover the theory of the defense, there is no error.").

Alessa argues that the district court erred in refusing to instruct the jury on the "assignment of income" doctrine. We disagree.

With respect to the false return counts, the district court instructed the jury:

> In deciding whether Mr. Alessa's 2012 and 2013 tax returns were materially false, you are instructed that income is taxable to the person who earns it. The person earning the income cannot avoid taxation by entering into an agreement, no matter how skillfully devised, whereby that income is diverted or assigned to some other person or entity. Such arrangements known in tax law as "anticipatory assignments of income," are not recognized as a means of avoiding tax liability.

These instructions correctly tracked the language of *Lucas v. Earl*, 281 U.S. 111 (1930), which addressed the "assignment of income" doctrine. *Id*. at 114–15. The district court did not abuse its discretion in rejecting Alessa's proffered additional instructions on this subject, which were confusing, incomplete, and potentially misleading. *George*, 420 F.3d at 1000 ("While a defendant is entitled to an instruction that adequately addresses his theory of defense, he is not entitled to an instruction that misstates the law.").[1]

## II

When reviewing the sufficiency of the evidence of a crime, we evaluate "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

---

[1] We also reject Alessa's challenge to the district court's instruction allowing the jury to draw a permissive inference from Alessa's signature on his returns that he had knowledge of their contents. Unlike the instruction in *United States v. Trevino*, 419 F.3d 896, 902–04 (9th Cir. 2005), nothing in the language of the instruction suggests an impermissible shifting of the burden.

Under this standard, the evidence was sufficient.

The evidence at trial was overwhelming that from 2010 to 2013, Alessa was working at J&L as a sales team leader. Seven J&L employees testified to that point. There was also ample evidence that this was part of a general scheme to make it appear as if Hayes was earning money from Alessa's work. Amy Ra, an employee at Sierra Funding, a company run by Bowen that would finance J&L vacuum sales, testified that she was "aware of an arrangement where Ms. Hayes was paid for the work Mr. Alessa performed." Another office worker at J&L, Rachelle Chanslee Molyneaux, testified that all of Alessa's pay was "going in Jackie's name." Molyneaux also said that "Ms. Hayes was paid a team leader profit and a distributor profit based on" at least one of Alessa's sales. Molyneaux testified that once Alessa and Hayes ended their personal relationship, Alessa's sales contracts began to be recorded under his name.

Alessa argues that the Government did not produce "sufficient evidence [that] Alessa *knew* he had a duty to pay taxes." We disagree. Hayes testified that Alessa's sales were recorded under her name "[i]n order to hide his income from the government." Additionally, records produced to the U.S. Trustee's Office were whited-out to hide Alessa's role at J&L, providing strong evidence of scienter. Hayes testified that she personally saw Alessa white-out his name from contracts "[t]o hide any evidence of him having sales through the office." This was enough

6

evidence for a reasonable jury to find Alessa knew he had a duty to pay taxes and willfully abandoned that duty. *Jackson*, 443 U.S. at 319.

## III

Alessa argues that the district court violated his constitutional right to present a complete defense when it excluded the testimony of Professor Patricia Cain, who would have given expert testimony on the assignment of income doctrine.[2] The district court correctly noted that *United States v. Powell*, 955 F.2d 1206 (9th Cir. 1991), allows the exclusion of legal materials in a tax case where the defendant does not claim to have relied on the materials, "because only the defendant's subjective belief is at issue." *Id.* at 1214. The district court concluded that "even assuming that Alessa is correct that the law governing assignment of income is complex and unsettled, Professor Cain's testimony is irrelevant if Alessa was not aware that the law was unsettled" and that her testimony "would confuse the issues for the jury." There was no abuse of discretion. Cain could not have testified as to Alessa's actual understanding of this area of tax law, only the clarity

---

[2] Alessa also challenges the district court's exclusion of Richard Molezzo's testimony and its limitation of Jeffrey Dean Smith's testimony. This court rejected these contentions in Bowen's appeal, and we reject them here for substantially the same reasons. *See United States v. Bowen*, No. 22-10115, 2023 WL 3300518, at *1–2 (9th Cir. May 8, 2023). To the extent that Alessa contends that the district court improperly limited Smith's testimony touching on ultimate issues concerning subjective intent, we discern no abuse of discretion by the district court and no erroneously prejudicial limitation of Alessa's ability to present a defense.

of the tax code to a reasonable person. *Id*. Given the limited probative value of Cain's testimony and the potential for confusion of the issues, the district court acted within its discretion by excluding it.

Alessa's remaining evidentiary issues warrant little discussion. We reject, as insubstantial, Alessa's contention that the Government had not adequately established a conspiracy between Hayes and Alessa to support admission of co-conspirator statements under Federal Rule of Evidence 801(d)(2)(E). *Bourjaily v. United States*, 483 U.S. 171, 175 (1987). We likewise reject Alessa's argument that the Government failed to lay an adequate foundation to authenticate screenshots purportedly from Alessa's Facebook page. Finally, the district court correctly denied Alessa's motion to sequester Hayes's counsel, Telia Williams, from the courtroom, given that Federal Rule of Evidence 615(a) only authorizes the exclusion of "witnesses." *See* FED. R. EVID. 615(b) (stating that an exclusion order under Rule 615(a) "operates only to exclude witnesses"). Because Alessa did not request an order under Rule 615(b) prohibiting "disclosure of trial testimony" to excluded witnesses, we do not address any claims based on Rule 615(b).

**IV**

We reject Alessa's claims of prejudicial prosecutorial misconduct.

We review de novo the district court's rulings that the Government did not

violate its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972). *See United States v. Kohring*, 637 F.3d 895, 901 (9th Cir. 2011). We find no error. The relevant impeachment material concerning IRS Revenue Officer Kelly Gurney was disclosed five months before trial and was used in impeaching her on the stand. Alessa's theory that the delayed disclosure adversely impacted his pretrial preparation rests on implausible speculation. To the extent that Alessa challenges the Government's delayed disclosure of Hayes's draft plea agreement, there was no *Brady* violation. As the district court noted, the only information that was contained in the Government's draft of Hayes's plea agreement and that had not already been disclosed in interview memoranda concerning Hayes was information related to "the government's understanding" of what Hayes meant by the statements recounted in those memoranda. Moreover, Alessa had the draft agreement before Hayes was cross-examined, and there is no basis in the record to conclude that the draft agreement could have been used in defense cross-examination of earlier witnesses in a way that undermines confidence in the outcome of the trial. *United States v. Bagley*, 473 U.S. 667, 678 (1985). Finally, to the extent that Alessa challenges the Government's failure to disclose any tax issues concerning its witnesses, we discern no prejudice in the context of this case. The Government did disclose such information as to one witness, and Alessa elicited similar information on cross-

9

examination of another witness. To the extent that Alessa contends that, with respect to any other witnesses, the Government's stated legal position concerning the scope of its *Brady* obligations concerning such tax issues was legally erroneous, Alessa failed to pursue that issue further after the district court initially deferred it.

With respect to the Government's contacts with Alessa's bankruptcy attorney, we agree with the district court's conclusion that there was insufficient evidence of bad faith to warrant the sanction of dismissal of the indictment.

The Government's asserted improper questioning of Robbin Little, a paralegal at the U.S. Trustee's Office, did not warrant a mistrial. The district court struck the testimony in question and provided a curative instruction directing the jury not to consider it. Juries are presumed to follow their instructions, and there is no basis for concluding that the jury did not do so here. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000). The district court did not abuse its discretion in concluding that the Government had not engaged in intentional misconduct warranting a mistrial.

## V

"The Fifth Amendment guarantees that defendants will not be denied due process as a result of excessive preindictment delay." *United States v. Sherlock*, 962 F.2d 1349, 1353 (9th Cir. 1989). To show a violation of the Due Process

Clause, Alessa must show (1) that there was "actual, non-speculative prejudice from the delay," and (2) that, when the length of the delay is weighed against the reasons for it, the delay "offends those fundamental conceptions of justice which lie at the base of our civil and political institutions." *United States v. Corona-Verbera*, 509 F.3d 1105, 1112 (9th Cir. 2007) (simplified). As this test poses a "heavy burden" for defendants, *United States v. Huntley*, 976 F.2d 1287, 1290 (9th Cir. 1992), "[a]n indictment is rarely dismissed because delay by the prosecution rises to the level of a Fifth Amendment due process violation," *United States v. Barken*, 412 F.3d 1131, 1134 (9th Cir. 2005). This court reviews the denial of a motion to dismiss on the grounds of preindictment delay for an abuse of discretion. *Id*.

Alessa argues that the Government's excessive delay in indicting him prejudiced him in that an intervening medical diagnosis limited the ability of his tax preparer, David Levine, to testify. Alessa has failed to provide any "definite and non-speculative evidence" "that the loss of [Levine's] testimony meaningfully . . . impaired his ability to defend himself." *Huntley*, 976 F.2d at 1290. Alessa's unsupported statements that Levine would have provided exculpatory testimony are the kind of "[g]eneralized assertions of the loss of memory, witnesses, or evidence [that] are insufficient to establish actual prejudice." *United States v. Manning*, 56 F.3d 1188, 1194 (9th Cir. 1995). Because Alessa did not show

11

"actual prejudice" from the Government's preindictment delay, we need not reach the second step of the analysis. *Id*. ("If [the defendant] fails to demonstrate actual prejudice, our inquiry ends.").

## VI

None of the issues Alessa raises concerning jury selection require reversal.

Relying on *Batson v. Kentucky*, 476 U.S. 79 (1986), Alessa contends that the Government engaged in racial discrimination in exercising a peremptory strike against Juror Three, a Hispanic juror. *Batson* challenges are evaluated under a three-step framework:

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race. Second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question. Third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

*Miller-El v. Cockrell*, 537 U.S. 322, 328–29 (2003) (citations omitted). "Ordinarily, we review the district court's ruling on a *Batson* challenge for clear error." *United States v. Hernandez-Garcia*, 44 F.4th 1157, 1163 (9th Cir. 2022) (citation omitted). In particular, "[t]he district court's findings regarding purposeful discrimination in the jury selection process are findings which we will not set aside unless clearly erroneous." *United States v. De Gross*, 960 F.2d 1433, 1442 (9th Cir. 1992) (en banc). However, we review de novo whether the district

court properly applied the three-step *Batson* framework.  *Hernandez-Garcia*, 44 F.4th at 1663.

Alessa argues that the district court omitted the third step from its *Batson* analysis, but we disagree.  Although the district court in its ruling did not neatly catalog its comments in terms of *Batson*'s three steps, we think it is clear from the transcript that the district court's denial of the challenge rested upon the court's determination that the race-neutral explanation offered by the prosecutor—namely, that the juror was unavailable on a state holiday that would fall in the middle of the federal court trial—was credible and that the prosecutor was not engaged in discrimination.  That finding was not clearly erroneous, and we find Alessa's contrary arguments on that score to be unpersuasive.  *Paulino v. Harrison*, 542 F.3d 692, 699 (9th Cir. 2008) ("At step three, the question of whether the defendant has proven purposeful discrimination is a question of fact that we review for clear error.").

Alessa also argues that the District of Nevada's jury selection plan violates the "fair cross-section requirements" of the Sixth Amendment and the Jury Selection and Service Act ("Jury Selection Act"), 28 U.S.C. § 1863(a).  *United States v. Hernandez-Estrada*, 749 F.3d 1154, 1158 (9th Cir. 2014) (en banc).  On that basis, Alessa filed a motion to stay proceedings, but the district court denied the motion, relying in part on its similar rulings in a separate case, *United States v.*

*Knight*, No. 3:19-cr-00038-MMD-CLB, 2021 WL 951885 (D. Nev. Mar. 11, 2021). This court reviews "'independently and non-deferentially a challenge to the composition of grand and petit juries' under both the Constitution and the Jury Selection Act." *Hernandez-Estrada*, 749 F.3d at 1158 (citation omitted). We conclude that the district court correctly denied the motion.

Whether a jury pool comports with the applicable fair cross-section requirements is analyzed under the three-prong test from *Duren v. Missouri*, 439 U.S. 357, 364 (1979). The Government does not contest that Alessa met the first prong, which requires him to identify distinctive groups in the community that he contends are underrepresented. *Hernandez-Estrada*, 749 F.3d at 1159. The second prong required Alessa to show that "the representation of th[ese] group[s] in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community." *Id*. (citation omitted). Even assuming *arguendo* that Alessa met this prong and showed that males, African Americans, Native Americans, and Hispanics are underrepresented, we agree that Alessa failed to meet the third prong, which required him to show that the underrepresentation is "due to the *system* by which juries were selected." *Id.* at 1165 (citation omitted).

Alessa asserts that the plan does not include "inactive" voters, *i.e.*, voters who are still registered to vote in a county but for whom the county has no active mailing address, either because a confirmatory mailing was returned without a

forwarding address or because U.S. Postal Service records show that the person moved outside the county. Alessa contends that Blacks in particular "generally move at a higher than average rate" and are therefore more likely to be affected by this feature. But given that jurors are necessarily summoned by mail, inclusion of such inactive voters would not be expected to make a material difference to the composition of the venire, because (given the lack of valid active mailing addresses) they would not receive their jury summonses. On this record, Alessa's differential-moving theory failed to establish a prima facie case that the asserted underrepresentation was due to this systematic feature and would be addressed by the "alternative system he proposes." *Hernandez-Estrada*, 749 F.3d at 1166 (citation omitted).

Alessa also points to the fact that the master wheel is replenished "only every two years," which he contends fails to capture newer voters who are more likely to be members of racial minorities. But, as the district court concluded, Alessa failed to show that the differences between an annual replenishment and a biannual one are significant enough to establish systematic exclusion. Finally, Alessa contends that the disparities alone are sufficient to infer a systematic exclusion, but on the record of this case that argument fails both factually and legally. *See Hernandez-Estrada*, 749 F.3d at 1166 (holding that the "significant evidence regarding underrepresentation" presented there did not suffice to establish

15

systematic exclusion).[3]

## VII

Alessa argues that Counts Three and Four, filing false tax returns, 26 U.S.C. § 7206, are lesser included offenses of Count Two, tax evasion, 26 U.S.C. § 7201, and that the district court erred in denying his motion to dismiss these counts on double-jeopardy grounds. The Double Jeopardy Clause of the Fifth Amendment prohibits the imposition of multiple criminal punishments for the same offense at the same trial, unless Congress has expressed in the relevant statutes its intention that multiple punishments be available. *Garrett v. United States*, 471 U.S. 773, 779 (1985). In determining whether two criminal provisions count as the same offense for purposes of this rule, courts look to "whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932).

Alessa contends that, as the statutes were applied in the context of this case, his false return charges were lesser included offenses of his tax evasion charge,

---

[3] We reject Alessa's argument that the district court's jury selection plan violates his constitutional rights by failing to collect demographic information concerning persons of "Middle Eastern descent." *Test v. United States*, 420 U.S. 28 (1975), recognizes a statutory right to "inspect the jury lists," *id*. at 30, but it affords no right to have jury information compiled in any particular way. Alessa has cited no authority that would support his view that the Constitution requires that prospective-juror demographic information compiled for fair-cross-section purposes must include the additional granularity he suggests.

16

because the false return violations were included among the various affirmative acts charged in the tax evasion count. But even if, in some cases, false tax return counts are lesser included offenses of a charge of tax evasion, Alessa's contention fails on the facts of this case. On this record, no reasonable jury could have convicted Alessa on all counts without having found *other* charged "affirmative acts" to support the tax evasion count *beyond* the false tax returns. *Cf. United States v. Galecki*, 89 F.4th 713, 741–42 (9th Cir. 2023) (holding that invalidity of one predicate offense was harmless error when no rational juror could have convicted *only* based on the invalid predicate but not on the other, valid predicate). Because the two sets of charges thus validly rested on distinct conduct, it is clear beyond a reasonable doubt here that Alessa was convicted of a different offense on each count.

## VIII

Alessa was sentenced to 13 months incarceration and a three-year term of supervised release. Alessa argues that the district court incorrectly calculated the tax loss, and therefore incorrectly calculated the base offense level under the Sentencing Guidelines. There was no clear error. The indictment alleged that he specifically evaded taxes that he owed from the calendar years 1998 to 2007. His tax liability from this period was $206,971.39. He also owed $295,326.84 in penalties and interest. This adds to $502,298.23, which is the amount given as

17

Alessa's tax debt when he filed for bankruptcy in 2013. For purposes of the Sentencing Guidelines, "tax loss does not include interest or penalties, except in willful evasion of payment cases under 26 U.S.C. § 7201." U.S.S.G. § 2T1.1 cmt.1. Therefore, the district court correctly determined that the tax loss was greater than $250,000, giving Alessa a base offense level of 18. U.S.S.G. § 2T4.1.

The district court also ordered Alessa, Hayes, and Bowen to pay $502,298.23 in restitution based on the total loss to the IRS. This amount encompassed Alessa's entire tax debt and penalties from 1998 to 2013. The restitution order specified that Hayes, Bowen, and Alessa were jointly and severally liable for this amount. Even if that amount exceeded what Bowen could be liable for under the conspiracy charge, *cf. United States v. Bowen*, No. 22-10115, 2023 WL 3300518, at *1–2 (9th Cir. May 8, 2023), it properly accounted for all relevant conduct to the conspiracy charge as to Alessa. *Cf.* U.S.S.G. § 1B1.3(a)(1)(A), (B).

Finally, we discern no plain error in the district court's calculations in imposing the costs of prosecution.

For the foregoing reasons, we affirm Alessa's conviction and sentence.

**AFFIRMED.**

18